Cheryl **WELLS**, a minor by her father and next friend, Carroll G. Wells and Carroll G. Wells, Plaintiffs-Appellees,

v.

**COLORADO COLLEGE**, Defendant-Appellant.

No. 72–1390.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted March 28, 1973.

Decided April 23, 1973.

---

2. Colorado Licensing and Practice Act, C.R.S.1963, 125–1–12 and 125–1–21.

Reed L. Winbourn, of Zarlengo, Mott & Carlin, Denver, Colo., for defendant-appellant.

John F. Bennett, of Bennett, Heinicke, Morrison & Holloway, Colorado Springs,

Colo. (Howard Morrison, of Bennett, Heinicke, Morrison & Holloway, Colorado Springs, Colo., on the brief), for plaintiffs-appellees.

Before BREITENSTEIN and DOYLE, Circuit Judges, and KERR,* District Judge.

WILLIAM E. DOYLE, Circuit Judge.

In this diversity action, the plaintiff, suing through her father, recovered a judgment against Colorado College in the amount of $150,000.00. In addition, her father, who was also maintaining an action in his own behalf for actual damages, recovered the sum of $15,742.43. The incident which gave rise to the injuries and to the lawsuit was an unusual one. Plaintiff was injured in the course of taking a judo lesson which was sponsored by the appellee college.

Plaintiff was shown to have resided in Illinois but was at the time enrolled as an undergraduate student at Colorado College. The judo class which the plaintiff was taking at the time of the injury had been arranged by the college as a self-defense measure for the students— there having been a number of incidents involving assaults which had occurred on the campus. The college employed two Colorado Springs police officers to conduct the classes. The students worked in pairs. After having received instruction, they practiced on one another. The particular exercise which allegedly produced the injury was a hip throw. The person executing the hip throw grasps the partner by the shoulders and turns quickly. By throwing the person grasped over the hip it causes her (or him) to lose balance. The person throwing eases the other to the mat. The plaintiff's partner was unable to throw her and the policeman instructor demonstrated the throw on the plaintiff. She was thrown on her back but did not land on the mat. The two mats had, according to the evidence, come apart. Plaintiff's back hit partly on the mat and partly on the floor.

Plaintiff testified to immediate awareness of back pain. She attempted to work out the injury by exercise and she also applied heat and rested it. None of this succeeded and although plaintiff tried to carry on normal activities including skiing, she was unable to do so and finally she visited an orthopedic surgeon, a Dr. Hauser, while on spring vacation at Evanston. He applied a body cast but this was also unsuccessful. Dr. Hauser diagnosed plaintiff's injury as intervertebral disc in the lower back (between L4 and L5). During the following days she fell down while walking in her dormitory. She was unable (due to her weakened condition) to finish the semester. She returned home and thereafter was taken to Mayo Clinic. A laminectomy was performed on June 24, 1969. However, this operation did not alleviate her troubles. When she returned to school in the fall she continued to experience intense pain as a result of which further surgery became necessary. This was performed at the Mayo Clinic on February 6, 1970. Plaintiff was not released from the Clinic until March 29, 1970. This operation was more extensive than the first. The disc was operated on and the spine was fused at the place of the injury.

At the next semester plaintiff returned to school at Colorado College. The pain persisted but she completed the term and went on a summer trip to Europe. The trip was interrupted by severe back pains and muscle spasms causing plaintiff to be further hospitalized. After that she continued her studies at Northwestern University, finally completing them.

Plaintiff testified that as a result of her injury she lost a full year of college.[1] The evidence also established

---

* Sitting by designation.

1. Plaintiff's injury occurred on February 21, 1968, and according to her testimony she was continuing to suffer pain and disability on the date of the trial which was March 2, 1972.

that she had permanent disabilities. Although she had been an expert athlete excelling in ice skating, swimming, diving, skiing and horseback riding, she was unable, after the accident, to engage in anything more strenuous than walking. The pain was shown to have continued up to the time of trial. All of this, according to the evidence, had a serious psychological as well as physical effect on her.

In seeking a reversal of the very substantial judgments appellant raises numerous issues. Some of these are argued in the brief, while other points are merely mentioned. The points which are emphasized include:

1. The contention that it was error to instruct the jury on contributory negligence but for the court to refuse to instruct on voluntary assumption of risk.

2. Alleged excessiveness of the verdict.

3. Instructing on loss of earnings since plaintiff was a student.

4. Receiving medical bills after May 2, 1968 (immediately after the incident and following a supervening fall); instructing on expenditure for travel and subsistence of parents to Mayo's.

5. Instructing on loss of enjoyment of life.

Appellant merely mentions the following:

6. Alleged error in denying the motions of appellant for a directed verdict, for a new trial and for judgment notwithstanding the verdict.

We have been unable to perceive merit in any of the above contentions and, therefore, we affirm the judgments.

## I.

### REFUSAL TO INSTRUCT ON ASSUMPTION OF RISK

■ The trial court charged the jury as to the standards applicable to contributory negligence, but determined that an instruction on assumption of risk was not appropriate. As noted, the appellant contends that it was prejudicial to refuse to give this requested instruction and this contention is the primary one advanced. This is not a case involving participation in a sport which activity is commonly associated with the assumption of risk doctrine. Rather, the plaintiff was participating in a scheduled class and was doing so for a very practical reason. But even if we were to consider it as a sport, the evidence presented would still be deficient to support assumption of risk because it is not shown that the plaintiff anticipated an extraordinary hazard such as that to which she was subjected. She had a right to expect that she would be thrown on the mat and not on the hardwood floor.

■ It is the law of Colorado, of course, which governs the question which we now consider, see Askin v. Dalgarno, 293 F.2d 424 (10th Cir. 1961), and the trial court's view of state law within its district is to be upheld unless it is clearly erroneous.

The Supreme Court of Colorado considered this very question in Summit County Dev. Co. v. Bagnoli, 166 Colo. 27, 441 P.2d 658, 661–662 (1968). The court there held that the important aspects of assumption of risk are knowledge or awareness of a risk assumed and voluntary participation in it. The court in commenting on the extent of knowledge required to support assumption of risk quoted from Restatement of the Law of Torts Second 496, which states that the plaintiff must know the existence of the risk and must appreciate its unreasonable character. *See also* Appelhans v. Kirkwood, 148 Colo. 92, 365 P.2d 233 (1961); Prosser, Law of Torts 461, 462 (3d ed. 1964).[2]

---

2. The author there states:
   "Knowledge of the risk is the watchword of assumption of risk." Under ordinary circumstances the plaintiff will not be taken to assume any risk of either activities or conditions of which he is

Instruction on contributory negligence and assumption of risk given in the same case tend to confuse rather than to enlighten. *See* Summit County Dev. Co. v. Bagnoli, *supra.* A juror is apt to consider assumption of risk as a bar to recovery for an injury incurred in an activity such as that at bar regardless of whether the risk was one about which the plaintiff was aware or not. Thus, in a skiing case such as the Colorado Supreme Court had before it in Summit County Dev. Co. v. Bagnoli, *supra,* the jury might find that the plaintiff had assumed the risk by participating in the activity. Similarly here a jury could conceivably jump to the mistaken conclusion that one who takes part in judo lessons accepts all hazards seen and unseen. Accordingly, we are of the opinion that sound reason existed for the trial court's rejection of this instruction.

## II.

### A. THE ALLEGED EXCESSIVENESS OF THE VERDICT

■ Appellant levels its attack against the award in the amount of $150,000.00 to appellee Cheryl Wells, contending that this amount was excessive in light of the injuries suffered and the extent of permanent disability. In order for this court to set aside the jury award it would have to be convinced that the jury was guilty of an abuse of discretion and the verdict was the result of bias, prejudice or passion. *See* 3 Barron & Holtzoff (Wright ed.) 1302.1. Such bias, prejudice or passion can be inferred from excessiveness. Earl W. Baker & Co. v. Lagaly, 144 F.2d 344, 347 (10th Cir. 1944). However, a verdict will not be set aside on this basis unless it is so plainly excessive as to suggest that it was the product of passion or prejudice on the part of the jury. *See* Snowden v. Matthews, 160 F. 2d 130, 131 (10th Cir. 1947).

■ In the case at bar the injury was unquestionably severe. Notwithstanding two operations, the condition persisted and undisputedly plaintiff's activities have been curtailed. Considering the duration time wise of her disability, the pain and suffering involved and her loss of one year of schooling, together with the fact that, at least from the indications, she is permanently disabled, we would not be justified in setting aside the award as excessive. The most that can be said is that it is on the high side, but abuse of discretion is not apparent.

### B. LOSS OF EARNINGS

■ Nor did the court err in instructing the jury on the loss of earnings, past and future. It is true that the evidence established that the plaintiff had not been employed—that she had been a student. But even assuming that the plaintiff had not established in specific terms her earning capacity, from that fact it does not follow that the jury was not entitled to consider her training, her athletic prowess, her personality before and after and other factors from which it was to be reasonably concluded that she had potential earning capacity and from concluding also that her earning capacity had been and now has been impaired. *Cf.* Thompson v. Tartler, 166 Colo. 247, 443 P.2d 365 (1968). *See also* Annot. 18 A.L.R.3d § 2 at 96.

ignorant. Furthermore, he must not only know of the facts which create the danger, but he must comprehend and appreciate the danger itself. "A defect and the danger arising from it are not necessarily to be identified, and a person may know of one without appreciating the other." The standard to be applied is, in theory at least, a subjective one, geared to the particular plaintiff and his situation, rather than that of the reasonable man of ordinary prudence who appears in contributory negligence. If because of age or lack of information or experience, he does not comprehend the risk involved in a known situation, he will not be taken to consent to assume it. His failure to exercise ordinary care to discover the danger is not properly a matter of assumption of risk, but of the defense of contributory negligence.

## C. LOSS OF ENJOYMENT

 The trial court's charge contained an instruction on past and future "pain, suffering and mental anguish." The judge then went on to say:

In this connection you may take into account, and you should take into account, plaintiff's interests and past way of life and you may allow for any loss of enjoyment of life for any emotional strain or any mental suffering which you find proximately resulted from the negligence of the defendant or its agents.

Accordingly, the element of loss of enjoyment was tied to emotional strain or mental suffering. As we view this, it was more an explanation of mental suffering than allowance of damages for loss of enjoyment of life as such.

The Supreme Court of Colorado has neither approved nor disapproved loss of enjoyment as an element, and so even if the instruction in question had not submitted loss of enjoyment as a part of pain and suffering, we are not saying that the instruction would have been invalid. It is unnecessary to pass on that. We note that a few cases have disallowed recovery for loss of enjoyment of life as a separate element of damages because of its vagueness. Nevertheless, a number of courts have recognized it. See the recent note in 15 A.L.R.3d 506, 511, 513. A number of courts have held that loss of the capacity to enjoy life, resulting from personal injuries, is a proper element of damages, separate and distinct from pain and suffering. *See* 15 A.L.R.3d § 5 at 514.

Accordingly, we are unable to agree with appellant that the instruction was erroneous.

## III.

## DENIAL OF MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT

 Notwithstanding that the appellee has not argued the present issue, we have carefully considered the evidence and are of the opinion that the plaintiff made out a prima facie case of negligence because the activity was a hazardous one; it was being performed by an expert and his duty of care was commensurate with the high degree of hazard and the likelihood of injury if the judo throw went awry.

We are of the opinion that the judgments of the district court should be and the same are hereby affirmed. It is so ordered.