[No. A067320. First Dist., Div. One. Mar. 11, 1996.]

GARY B. BUSHNELL, Plaintiff and Appellant, v.
JAPANESE-AMERICAN RELIGIOUS AND CULTURAL CENTER,
CONCORD JUDO CLUB et al., Defendants and Respondents.

COUNSEL

Jacobs, Spotswood, Casper & Murphy, Milton Jacobs and James P. Molinelli, Jr., for Plaintiff and Appellant.

Gilles, Nicora, Minor & Sullivan and Timothy J. Minor for Defendants and Respondents.

## Opinion

**STEIN, J.**—Gary Bushnell suffered a broken leg while attempting to perform an exercise during a judo class at the Japanese-American Religious and Cultural Center, Concord Judo Club. (Hereafter the defendants will be referred to collectively as the Club.) Bushnell's partner in the exercise was Daniel Tamori, an instructor at the Club, and the evening's activities were supervised by George Tamori, the Club's director and head of instruction at the Club. The trial court granted summary judgment to the Club on the theory that the defense of primary assumption of risk as defined in *Knight* v. *Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696], provided a complete defense to the action. Bushnell contends that the defense does not apply here, because unlike the plaintiff in *Knight*, he was not injured by an amateur coparticipant in an unsupervised sport, but by an instructor in a sport organized by the Club and supervised by another instructor employed by the Club. It is true that the relationship between the plaintiff and the defendant is a factor to be considered in determining if the defense of primary assumption of risk applies and instructors may be held liable when their actions have increased the inherent risks in an activity. (*Tan* v. *Goddard* (1993) 13 Cal.App.4th 1528 [17 Cal.Rptr.2d 89] and *Galardi* v. *Seahorse Riding Club* (1993) 16 Cal.App.4th 817 [20 Cal.Rptr.2d 270].) On the undisputed facts of the present case, however, we find no evidence that any employee or agent of the Club increased the risks inherent in the activity of learning judo. We therefore affirm the judgment.

### Standard of Review

To be entitled to summary judgment, a defendant must establish "as a matter of law" that none of plaintiff's asserted causes of action can prevail. (Code Civ. Proc., § 437c, subd. (c); *Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) "A defendant may do so as to a particular cause of action by establishing, as a matter of undisputed fact, either (1) that one of the necessary elements of that cause of action does not exist, or (2) that it has a complete defense to that cause of action. (*LaRosa* v. *Superior Court* (1981) 122 Cal.App.3d 741, 744 [176 Cal.Rptr. 224].) [¶] Since the existence of the primary assumption of the risk is dependent upon the existence of a legal duty, and since duty is an issue of law to be decided by the court, the applicability of that defense is amenable to resolution by summary judgment. [Citation.]" (*Freeman* v. *Hale* (1994) 30 Cal.App.4th 1388, 1395 [36 Cal.Rptr.2d 418].) On review the evidence and the parties' arguments are considered de novo (*Saldana* v. *Globe-Weis Systems Co.* (1991) 233 Cal.App.3d 1505, 1511-1513 [285 Cal.Rptr. 385]),

and the reviewing court shall "strictly construe the moving party's papers and liberally construe those of the opposing party to determine if they raise a triable issue of material fact." (*Stimson* v. *Carlson* (1992) 11 Cal.App.4th 1201, 1205 [14 Cal.Rptr.2d 670].) We relate the relevant facts in light of this standard.

## Facts

The Club provides instruction in judo. George Tamori is the director and head of instruction at the Club. Daniel Tamori is a volunteer instructor. Bushnell, 35 years old at the time of his injury, had been attending judo classes on a weekly basis for about one year. Bushnell was practicing a "tai otoshi" throw, a relatively simple maneuver learned early in judo training. Daniel Tamori was acting as Bushnell's practice partner, meaning that Tamori would allow himself to be thrown, or to some extent would "jump" through the throw. As the class progressed Bushnell and Tamori worked more and more quickly, attempting to work up to performing the exercise at full speed. Bushnell successfully completed the maneuver approximately two dozen times throughout the evening. On his last attempt, however, he fell or was driven backwards over his left leg, causing the leg to break. Neither Bushnell nor anyone else could state exactly how the injury occurred. Bushnell speculates that the injury was at least in part the result of the speed at which Daniel Tamori approached him.

## Discussion

As a general rule, persons have a duty of care to avoid injury to others, and may be held liable if their careless conduct injures another person. (Civ. Code, § 1714; *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) The doctrine of primary assumption of the risk as defined by the court in *Knight* v. *Jewett, supra*, 3 Cal.4th 296, acts as a limitation to this general rule, recognizing that in certain situations the nature of the activity at issue is such that the defendant does not owe a legal duty to the plaintiff to act with due care. In *Knight*, the plaintiff was injured during a touch football game when the defendant knocked her down and stepped on her hand. The court held that "in the heat of an active sporting event like baseball or football, a participant's normal energetic conduct often includes accidentally careless behavior. . . . [E]ven when a participant's conduct violates a rule of the game and may subject the violator to internal sanctions . . . , imposition of *legal liability* for such conduct might well alter fundamentally the nature of the sport by deterring participants from vigorously engaging in activity that falls close to, but on

the permissible side of, a prescribed rule." (*Knight, supra*, at pp. 318-319, italics in original.) The court concluded "that it is improper to hold a sports participant liable to a coparticipant for ordinary careless conduct committed during the sport—for example, for an injury resulting from a carelessly thrown ball or bat during a baseball game—and that liability properly may be imposed on a participant only when he or she intentionally injures another player or engages in reckless conduct that is totally outside the range of ordinary activity involved in the sport." (*Id.* at p. 318.) The rationale behind excusing participants from liability in sports cases is grounded in the notion that legal liability would inhibit the natural play of the game, interfere with the natural fervor of the participants and alter the game's essential nature. (*Id.* at pp. 318-319.)

The full scope of the defense of primary assumption of risk has yet to be established. Nonetheless, the cases that have considered the doctrine have established some principles that we can apply here. The doctrine applied in *Knight* in part because the defendant was a coparticipant in a competitive sport. The application of the doctrine, however, does not turn on whether the defendant was a coparticipant or whether the activity at issue was competitive rather than co-operative. Rather, in all cases the nature of the activity, the relationship of the defendant to the activity and the relationship of the defendant to the plaintiff must be examined. It must then be determined, in light of the activity and these relationships, whether the defendant's conduct at issue is an "inherent risk" of the activity such that liability does not attach as a matter of law. General rules of liability attach when the defendant's conduct is not an inherent risk of the activity or when the defendant's conduct increased the inherent risks in the activity. A defendant also may be charged with the duty to take such precautions as will prevent the risk without having a chilling effect on the nature of the activity. The court in *Knight* explained, for example, that a ski resort could not be held liable for failing to eliminate moguls on a ski run because the challenge and risks posed by the moguls are part of the sport of skiing. Nonetheless, because defendants generally have a duty to use due care not to increase the risks to a participant over and above those inherent in the sport, a ski resort "clearly does have a duty to use due care to maintain its towropes in a safe, working condition so as not to expose skiers to an increased risk of harm." (3 Cal.4th at pp. 315-316.) For similar reasons a baseball player does not have a duty to avoid throwing a bat carelessly, but the owner of the stadium may have a duty to take such precautions as reasonably will protect spectators from injuries resulting from carelessly thrown bats. (3 Cal.4th at p. 317, discussing the decision in *Ratcliff* v. *San Diego Baseball Club* (1938) 27 Cal.App.2d 733 [81 P.2d 625].) If the baseball player were required to pay

attention to the bat his attention to the game would suffer, adversely affecting the nature of the activity. Requiring an owner to erect a screen, however, could not adversely affect the nature of the activity so long as play can be seen through the screen. In both the ski resort and baseball examples, the question is whether a precaution taken to protect the plaintiff from injury—including acting with due care—would interfere with the activity in question. If so, the failure to take the precaution cannot result in liability, because the risk is an inherent part of the activity.

The doctrine of primary assumption of risk can apply even if the defendant was in some manner in control of the situation and thus in a better position than the plaintiff to prevent the plaintiff's injury. In *Ford* v. *Gouin* (1992) 3 Cal.4th 339 [11 Cal.Rptr.2d 30, 834 P.2d 724, 34 A.L.R.5th 769], the companion case to *Knight*, the plaintiff, an experienced water-skier, was injured when he was pulled under an overhanging branch while water-skiing barefoot and backwards. The court noted that unlike the activity of touch football in *Knight*, waterskiing is not competitive, but cooperative. The defendant to some extent controlled the speed and direction of the plaintiff. It did not follow, however, that the defendant owed a duty to the plaintiff to protect the plaintiff from injury, even if the injury might be attributed to the defendant's careless conduct. The Supreme Court held that the issue, as in *Knight*, simply is whether vigorous participation in the sport might be chilled if liability attached for careless conduct. "Imposition of legal liability on a ski boat driver for ordinary negligence in making too sharp a turn, for example, or in pulling the skier too rapidly or too slowly, likely would have the same kind of undesirable chilling effect on the driver's conduct that the courts in other cases feared would inhibit ordinary conduct in various sports. As a result, holding ski boat drivers liable for their ordinary negligence might well have a generally deleterious effect on the nature of the sport of waterskiing as a whole. Additionally, imposing such liability might well deter friends from voluntarily assisting one another in such potentially risky sports. Accordingly, the general rule limiting the duty of care of a coparticipant in active sports to the avoidance of intentional and reckless misconduct, applies to participants engaged in noncompetitive but active sports activity, such as a ski boat driver towing a water-skier. Under the principles set forth in *Knight*, summary judgment in favor of defendant was properly entered." (*Id.* at p. 345.)

█ In light of these authorities, we conclude that Bushnell's injuries were not the result of the breach of any duty owed to him. As in both *Knight* and *Ford*, Bushnell was engaged in an active sport. In addition, the uncontradicted evidence is that he was attempting to improve his skills by working

more and more quickly through the "tai otoshi" maneuver. That activity required Daniel Tamori's assistance and, of course, required Tamori to move more and more quickly. There is no evidence or allegation that Tamori acted recklessly or with an intent to cause injury. Bushnell's theory, rather, appears to be that Daniel Tamori moved more quickly than Bushnell had expected, or that Tamori miscalculated the speed at which Bushnell would be able to respond. We cannot sanction the imposition of liability in such circumstances without causing the type of chilling effect that *Knight* and *Ford* caution against. Instruction in an activity such as judo necessarily requires pushing a student to move more quickly, attempt a new move, or take some other action that the student previously may not have attempted. That an instructor might ask a student to do more than the student can manage is an inherent risk of the activity. Absent evidence of recklessness, or other risk-increasing conduct, liability should not be imposed simply because an instructor asked the student to take action beyond what, with hindsight, is found to have been the student's abilities. To hold otherwise would discourage instructors from requiring students to stretch, and thus to learn, and would have a generally deleterious effect on the sport as a whole.

Bushnell, citing *Tan* v. *Goddard, supra* 13 Cal.App.4th 1528 and *Galardi* v. *Seahorse Riding Club, supra,* 16 Cal.App.4th 817, contends that because Daniel and George Tamori were instructors the situation is one where primary assumption of the risk does not apply. Since the defense of primary assumption of the risk requires a consideration of the nature of the activity itself, the relationship of the parties to the activity and to one another, the fact that the defendant is an instructor is relevant to the question of liability. (And see *Knight* v. *Jewett, supra,* 3 Cal.4th at pp. 309, 313, 317.) As we recently recognized in *Regents of University of California* v. *Superior Court* (1996) 41 Cal.App.4th 1040, 1046 [48 Cal.Rptr.2d 922], however, a defendant does not owe a duty of care to the plaintiff simply because one can be labeled an instructor and the other a student. There is nothing in *Knight* from which it follows that an instructor always owes a duty of care to his or her students and thus becomes an insurer of their safety, and we would disagree with *Tan* and *Galardi* if they held otherwise. The question, as always, is whether, given the activity in question and the relationship of the defendant to the activity and to the plaintiff, the imposition of liability would have a chilling effect on the conduct required by the nature of the activity. Indeed, we find that although the opinions in *Tan* and *Galardi* do contain language supporting the claim that instructors always may be held liable for injuries to students under their instruction, the decisions reached in those cases are wholly compatible with our understanding of the principles enunciated in *Knight* and *Ford.*

In *Tan*, the plaintiff was a student at a jockey school. He was told to ride a particular horse that the instructor knew to be injured. The instructor pronounced the horse fit to ride and directed the plaintiff to jog the horse on a particularly rocky track. The horse's front legs gave way and the horse went down causing Tan's injuries. The court in *Tan* held that the riding instructor "owed Tan a duty of ordinary care to see to it that the horse he assigned Tan to ride was safe to ride under the conditions he prescribed for that activity. His failure to do so is analogous to the example cited in *Knight*, of the duty of the ski resort operator to use due care to maintain its towropes in a safe condition." (13 Cal.App.4th at pp. 1535-1536.) The *Tan* court thus simply reaffirmed that the party who controls the activity (such as a ski resort operator or the owner of a baseball stadium) may have a duty of care to provide a safe environment such that the activity can be performed without unnecessary risk. Nothing in *Tan* supports the argument that, absent reckless conduct or an intention to cause injury, an instructor who asks a student to take on a challenge in order to better his or her skills will be liable for injuries resulting from the student's failure to meet that challenge. Failing to provide a fit animal and a safe track increased the risk to the plaintiff beyond that inherent in the activity and liability might attach for requiring the plaintiff to take on the increased risk. To look at the situation another way, requiring the defendant to provide a safe horse and track could have no chilling effect on the activity itself, nor would it interfere with the ability of the instructor to teach the student new or better skills.

In *Galardi* v. *Seahorse Riding Club*, *supra*, 16 Cal.App.4th 817, the plaintiff was a student at a riding club and was preparing for an upcoming horse show. The instructor twice raised the height of the jumps without lengthening the space between the jumps, and then asked the student to ride through the course in the reverse direction. The horse was unable to make one of the jumps and threw the plaintiff, with the result that she sustained injury. The court in *Galardi* held, "[t]he complaint and evidence presented in the trial court created a question of fact concerning whether defendants, who, we may infer, had knowledge and experience concerning the sport of horse jumping superior to that of plaintiff, negligently deployed the jumps at unsafe heights or intervals and thereby breached the duty owed to plaintiff." (*Id.* at p. 823.) To the extent that the court found that the defendants had failed to provide a safe environment for the plaintiff, we agree that liability might attach because the defendants thereby increased the risk inherent in the activity. If, however, the court found that liability might attach because the defendants were negligent in asking the plaintiff to take on new challenges in order to improve her skills, we do *not* agree that liability might attach, at least in the absence of evidence that the instructor acted recklessly

or with an intent to cause injury. In other words, to the extent that a necessary or desirable part of the plaintiff's training was to ask her to take higher and higher jumps or take the jumps in various orders, the defendants should not be held liable simply because they were the plaintiff's instructors and it turned out that the plaintiff, or her horse, could not make the jump. If, however, the alteration in the course was such that it was reckless to ask the plaintiff to run it (i.e., the course was now unsafe), the instructors breached their duty to use due care not to increase the risks over and above those inherent in the sport, and liability should attach. The question, as always, is whether the imposition of liability would chill vigorous participation in the activity. To instruct is to challenge, and the very nature of challenge is that it will not always be met. It is not unreasonable to require a plaintiff who has chosen to be instructed in a particular activity to bear the risk that he or she will not be able to meet the challenges posed by the instructor, at least in the absence of intentional misconduct or recklessness on the part of the instructor. Any other rule would discourage instructors from asking their students to do anything more than they have done in the past, would therefore have a chilling effect on instruction, and thus would have a negative impact on the very purpose for seeking instruction: mastering the activity.

Bushnell cites *Wells* v. *Colorado College* (10th Cir. 1973) 478 F.2d 158, which is in no way binding on us; however, it provides a useful illustration of the distinction between the risk of injuries resulting from an attempt to improve a physical skill—which risk is inherent in the attempt to master the skill—and other types of risk that are not inherent and to which liability therefore may attach. The plaintiff in *Wells*, like Bushnell here, was a student in a judo class. She was injured during a demonstration when she was thrown and fell not onto a mat, but onto a hardwood floor, the mats having separated. The district court focused on the plaintiff's expectations, holding that the defense of assumption of risk did not apply because "it is not shown that the plaintiff anticipated an extraordinary hazard such as that to which she was subjected." (478 F.2d at p. 161.) The plaintiff's knowledge or expectations are not relevant to the defense of primary assumption of risk in California, (*Knight* v. *Jewett*, *supra*, 3 Cal.4th at p. 315). Nonetheless, California law also would not recognize the defense under the facts of the *Wells* case. By failing to ensure that the mats were adequate and properly secured, the defendants failed to provide a safe environment for the activity and thus increased its inherent risks.

In conclusion, the record in the present case contains no evidence from which it might be concluded that defendants or their agents acted recklessly or with the intention to injure Bushnell. Further, there is no evidence that

Bushnell was injured by anything other than an inherent risk attending the activity of attempting to learn or improve the skills used in judo. It follows that the imposition of liability on instructors or their employers in such situations would adversely effect the activity. The doctrine of primary assumption of risk applies and summary judgment properly was entered.

The judgment is affirmed.

Strankman, P. J., concurred.

**DOSSEE, J.**—I respectfully dissent. The majority concludes that summary judgment was properly entered because this case involves primary implied assumption of risk. (Maj. opn., *ante*, pp. 534-535.) In my view, this case involves secondary implied assumption of risk and, accordingly, is governed by principles of comparative fault. Since the trier of fact must determine the relative responsibility of plaintiff Gary Bushnell and defendant's agent Daniel Tamori, summary judgment should not have been granted.

In *Knight* v. *Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696], the Supreme Court considered "the question of the proper application of the 'assumption of risk' doctrine in light of [the] adoption of comparative fault principles in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]." (*Knight* v. *Jewett, supra*, 3 Cal.4th at pp. 299-300.) The plurality opinion summarized its holding as follows: "In cases involving 'primary assumption of risk'—where, by virtue of the nature of the activity and the parties' relationship to the activity, the defendant owes no legal duty to protect the plaintiff from the particular risk of harm that caused the injury—the doctrine continues to operate as a complete bar to the plaintiff's recovery. In cases involving 'secondary assumption of risk'— where the defendant does owe a duty of care to the plaintiff, but the plaintiff proceeds to encounter a known risk imposed by the defendant's breach of duty—the doctrine is merged into the comparative fault scheme, and the trier of fact, in apportioning the loss resulting from the injury, may consider the relative responsibility of the parties." (*Id.* at pp. 314-315.) "[T]he question of the existence and scope of a defendant's duty of care is a *legal* question which depends on the nature of the sport or activity in question and on the parties' general relationship to the activity, and is an issue to be decided by the court, rather than the jury. [Citation.]" (*Id.* at p. 313, italics in original.)

In *Knight*, "defendant was a participant in the touch football game in which plaintiff was engaged at the time of her injury, and thus the question before [the court] involve[d] the circumstances under which a participant in such a sport may be held liable for an injury sustained by another participant." (*Knight* v. *Jewett, supra*, 3 Cal.4th at p. 318.) The plurality opinion

followed "[t]he overwhelming majority of the cases, both within and outside California," concluding that ". . . a participant in an active sport breaches a legal duty of care to other participants—i.e., engages in conduct that properly may subject him or her to financial liability—only if the participant intentionally injures another player or engages in conduct that is so reckless as to be totally outside the range of the ordinary activity involved in the sport." (*Id.* at pp. 318, 320, fn. omitted.) Since the defendant in *Knight* had not engaged in such conduct, the case fell with the primary implied assumption of risk doctrine, and, therefore, the trial court properly granted summary judgment in favor of the defendant. (*Id.* at pp. 320-321.)

Although the *Knight* opinion did not address the circumstances under which defendants other than coparticipants were subject to financial liability, it noted that "in the sports setting, as elsewhere, the nature of the applicable duty or standard of care frequently varies with the role of the defendant whose conduct is at issue in a given case." (*Knight* v. *Jewett, supra*, 3 Cal.4th at p. 318.) Among the different roles identified in the opinion were those of "sports instructors and coaches [citations]." (*Ibid.*) Since *Knight*, the Courts of Appeal have considered the liability of such defendants.

In *Tan* v. *Goddard* (1993) 13 Cal.App.4th 1528 [17 Cal.Rptr.2d 89], the Court of Appeal held that a jockey instructor owed a duty of care to one of his students. (*Id.* at pp. 1534-1536.) The court began its analysis by noting that "we do not deal with the relationship between coparticipants in a sport, or with the duty that an operator may or may not owe to a spectator. Instead, we deal with the duty of a coach or trainer to a student who has entrusted himself to the former's tutelage." (*Id.* at p. 1534.) The court later emphasized that it was "dealing not with a sports participant, but with an instructor who is training a student how to become a participant." (*Id.* at p. 1535.)

In concluding that the instructor owed a duty of care to the student, the *Tan* court, like the *Knight* plurality, turned to the common law: "There are precedents reaching back for most of this century that find an absence of duty to coparticipants and, often, to spectators, but the law is otherwise as applied to coaches and instructors. For them, the general rule is that coaches and instructors owe a duty of due care to persons in their charge. (See Lowell, Liability for Sports Activities, in Law and Amateur Sports (1982) pp. 45, 61; Champion, Fundamentals of Sports Law (1990) § 3.1, p. 60; and see Miyamoto, *Liability of Colleges and Universities for Injuries During Extramural Activities* (1988) 15 J. of C. & U.Law 149, 152; Jones, *College Athletes: Illness or Injury and the Decision to Return* (1992) 40 Buffalo L.Rev. 113, 141; Rest.2d Torts, § 314A, and com. (b); *Stehn* v. *Bernarr*

*MacFadden Foundations, Inc.* (6th Cir. 1970) 434 F.2d 811, 813; *Everett* v. *Bucky Warren, Inc.* (1978) 376 Mass. 280 [380 N.E.2d 653, 659]; *Miller* v. *Macalester College* (1962) 262 Minn. 418 [115 N.W. 666]; and *Knight* itself, *supra*, 3 Cal.4th at p. 318 [citations to cases involving suits against sports instructors and coaches].) The coach or instructor is not, of course, an insurer (*Stehn* v. *Bernarr MacFadden Foundations, Inc., supra,* 434 F.2d at p. 813), and a student may be held to notice that which is obvious and to ask appropriate questions (see *Vendrell* v. *School District No. 26C, Malheur County* (1962) 233 Ore. 1 [376 P.2d 406].) But all of the authorities that comment on the issue have recognized the existence of a duty of care." (*Tan* v. *Goddard, supra,* 13 Cal.App.4th at pp. 1534-1535.)

Likewise, in *Galardi* v. *Seahorse Riding Club* (1993) 16 Cal.App.4th 817 [20 Cal.Rptr.2d 270], the Court of Appeal held that a horse jumping instructor owed a duty of care to one of her students "to avoid an unreasonable risk of injury to plaintiff and to take care that the jumping array was not beyond the capability of horse and rider." (*Id.* at p. 823.) Once again, the court looked to the common law in making this determination: "Upon review of the authorities relied upon in *Tan* and of case law in other jurisdictions (e.g., *Benitez* v. *New York City Bd. of Educ.* (1989) 73 N.Y.2d 650 [543 N.Y.S.2d. 29, 541 N.E.2d. 29]; *Kirk* v. *Washington State University* (1987) 109 Wn.2d 448 [746 P.2d 285], cited in *Knight* v. *Jewett, supra,* 3 Cal.4th 296, at p. 314), we have concluded that *Tan* was correctly decided and agree that the general rule is that coaches and instructors owe a duty of care to their charges." (*Galardi* v. *Seahorse Riding Club, supra,* 16 Cal.App.4th at pp. 823-824.)

In order to determine whether the general rule set forth in *Tan* and *Galardi* should be followed in a given case, it is appropriate to look not to "the labels given to the sporting participants, but instead [to] the facts surrounding their levels of experience and/or their relationships to one another in the activity resulting in the plaintiff's injury. [Citations.]" (*Regents of University of California* v. *Superior Court* (1996) 41 Cal.App.4th 1040, 1046 [48 Cal.Rptr.2d 922].) In this case, at the time of the accident, Daniel Tamori, a second degree black belt and a former national champion, was working as a volunteer instructor at the club. Bushnell was only a white belt. During a typical weekly session, students practiced throws on partners of like ability, size and age while instructors circulated to provide instruction, including hands-on instruction. On the evening in question, however, Bushnell's usual practice partner was absent, so he was paired with Tamori. The accident occurred while Bushnell was practicing a tai otoshi throw, also called a body drop, on Tamori. In its response to Bushnell's statement of undisputed facts,

the club acknowledged that "[d]ue to their superior ability, the instructors could successful[ly] resist being thrown by a student, but as a practice partner and instructor, the instructor allows himself to be thrown, assisting the thrower in this process by jumping over the thrower's leg."

Given both the gross disparity in Bushnell's and Tamori's relative levels of experience and the corresponding superior relationship that Tamori held over Bushnell during the practice session, I would hold that Tamori had a duty to avoid an unreasonable risk of injury to Bushnell and to avoid taking Bushnell beyond his level of experience and capability. (See *Regents of University of California* v. *Superior Court*, *supra*, 41 Cal.App.4th at p. 1046; *Galardi* v. *Seahorse Riding Club*, *supra*, 16 Cal.App.4th at p. 823.) "Having determined that [Tamori] had such a duty of care, the breach of which was a possible cause of [Bushnell's] injury (a matter which ultimately must be decided by the trier of fact), this case necessarily falls into the category of secondary assumption of risk. In such circumstance, it is for the trier of fact to determine the cause of the injury and to apportion the loss resulting from the injury; in so doing it may consider the relative responsibility of the parties. (*Knight* v. *Jewett*, *supra*, 3 Cal.4th 296, at p. 315.)" (*Galardi* v. *Seahorse Riding Club*, *supra*, 16 Cal.App.4th at p. 823.) Accordingly, I would reverse the summary judgment in favor of the club.