Filed 10/21/14; pub. order 11/6/14 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| TANYA HONEYCUTT, | B254180 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. LC095176) |
| v. | |
| MERIDIAN SPORTS CLUB, LLC, | |
| Defendant and Respondent. | |


APPEAL from the judgment of the Superior Court of Los Angeles, Huey P. Cotton, Judge.  Affirmed.

Zukor and Nelson, Marilyn H. Nelson, and Abram Charles Zukor, for Plaintiff and Appellant.

Manning & Kass, Ellrod, Ramirez, Trester, Anthony J. Ellrod, and Ladell Hulet Muhlestein, for Defendant and Respondent.

_____


Plaintiff and appellant Tonya Honeycutt suffered a knee injury during a kickboxing class, while being assisted by an instructor at defendant and respondent

Meridian Sports Club, LLC dba Meridian's Bodies in Motion (Meridian). The trial court granted Meridian's motion for summary judgment, ruling that Honeycutt had signed a valid waiver of liability, Meridian did not act with gross negligence, and the doctrine of primary assumption of the risk barred relief. In her appeal, Honeycutt argues there are triable issues of material facts regarding whether the instructor's conduct (1) increased the risk inherent in kick boxing and (2) constituted gross negligence. We affirm.

## PROCEUDRAL HISTORY

Honeycutt filed a form complaint against Meridian alleging personal injury caused by negligence and gross negligence. Honeycutt alleged she was a guest at Meridian on June 28, 2011. She had never participated in kickboxing, but decided to attend a kickboxing class. The class instructor negligently manipulated Honeycutt causing her knee to snap, resulting in severe physical injury requiring surgery. The instructor's conduct constituted gross negligence.

Meridian filed a motion for summary judgment, which the trial court denied. Meridian filed a petition for writ of mandate with this court. This court issued an alternative writ of mandate, directing the trial court to either reverse its order denying summary judgment and enter a new order granting the motion, or to show cause before this court why the relief should not be granted. The trial court complied with the alternative writ and entered summary judgment and judgment for Meridian. This timely appeal followed.

## THE MOTION FOR SUMMARY JUDGMENT

Meridian moved for summary judgment on four grounds. First, the cause of action for negligence was barred by a release of liability signed by Honeycutt. Second, the negligence cause of action was barred because Honeycutt executed an express assumption of the risk. Third, the doctrine of primary assumption of the risk barred the

2

negligence claim.  Fourth, the cause of action for gross negligence failed because Meridian's actions did not constitute gross negligence as a matter of law.

Honeycutt opposed summary judgment, first arguing the release relied upon in the motion for summary judgment is illegible.  She further contended there is a triable issue of fact regarding whether the Meridian's instructor increased the inherent risk in kickboxing and therefore the doctrine of primary assumption of the risk does not apply.  She further argued that the instructor's gross negligence negated the release of liability she signed before participating in the class.

## *Meridian's Undisputed Facts*

Honeycutt participated in a kickboxing class at Meridian on June 28, 2011, taught by Hakeem Alexander, a certified personal trainer and seasoned martial arts instructor.  Before the class, Honeycutt signed a one-page agreement which contained an express assumption of the risk agreement.  The agreement advised that use of Meridian's facilities naturally involves risk of injury, which the user understands and voluntarily accepts.  The user agrees Meridian will not be liable for any injury resulting from negligence by Meridian at or on the premises.

A roundhouse or swinging kick is executed by swinging the leg in a semicircular motion while pivoting on the supporting foot, striking with the shin, instep, or ball of the foot.  Knee injuries are an inherent risk of performing a roundhouse kick.  Kickboxing instructors often help students master maneuvers by making physical contact, including supporting students' legs or holding their hands for balance.

Alexander observed Honeycutt incorrectly attempting a roundhouse kick, keeping her supporting foot flat on the floor rather than going up on the toe in order to more easily pivot.  Alexander approached Honeycutt and corrected her form.  While performing a roundhouse kick, Honeycutt allegedly injured her knee.

*Honeycutt's Response to Meridian's Separate Statement of Undisputed Facts*

Alexander acted with gross negligence when he manipulated Honeycutt, causing her knee to snap. The print in the release of liability signed by Honeycutt is illegible. Alexander is not a certified kickboxing instructor. The proper method of teaching the roundhouse kick is by verbal instruction only, with the instructor describing the movement step-by-step without physical contact. Rather than describing the movement, Alexander held onto Honeycutt's right leg, with her left leg locked and planted on the floor. Alexander told Honeycutt to rotate, open her hips, and turn her planted foot outward to allow for a pivot before the kicking maneuver.

As additional undisputed facts, Honeycutt relied on the following evidence. At the time of the injury she was five feet three inches tall and weighed 185 pounds. Honeycutt had never taken a kickboxing class prior to the injury. Meridian provided Honeycutt with boxing gloves that she wore in the class. According to the declaration of Tyrone Valentine, a certified kickboxing instructor, the roundhouse kick is an intermediate or advanced technique. The proper method for teaching the kick is a verbal demonstration, demonstrating the kick on a step-by-step basis, and if the student cannot execute the movement, the instructor should regress to more basic kicks. Alexander increased the risk inherent in kickboxing by failing to use verbal instruction rather than physical contact with a novice like Honeycutt. He also increased the risk because he did not demonstrate or explain what he meant by telling her to rotate and by holding onto her leg.

In her declaration, Honeycutt states she was in the kickboxing class with six to seven students. Alexander performed one roundhouse kick, and Honeycutt saw her friends perform the kick, so she tried to copy them. After five minutes, Alexander told her to "[k]ick around me." She attempted to kick around him, and he grabbed her right leg between the ankle and knee. She locked her left knee and planted her foot to keep her balance. Alexander said "rotate" in a harsh tone without demonstrating how or in what direction Honeycutt should rotate. When she rotated her left knee, she felt a pop and the

4

knee gave out.  She suffered a ruptured ACL which required physical therapy, surgery, and four months of rehabilitation.

### *Meridian's Reply to the Opposition*

Meridian challenged Honeycutt's assertion that she could not read the release because it was illegible, on the basis that she did not make that assertion in her discovery responses, and in fact, she produced a clearly legible version of the release.  Meridian contended that primary assumption of the risk applies and Honeycutt failed to establish gross negligence.  Finally, Meridian disputed the authenticity of Valentine's expert declaration and made evidentiary objections to its admissibility.

### *The Trial Court's Initial Ruling and Subsequent Proceedings*

The trial court overruled Meridian's evidentiary objections.  Summary judgment was denied.  The court reasoned there were triable issues of material fact regarding whether Meridian increased the risk of injury and Meridian acted with gross negligence.

Meridian filed a petition for writ of mandate in this court.  After issuance of an alternative writ of mandate, the trial court elected to grant the motion for summary judgment, ruling there was a valid waiver of liability by Honeycutt, the waiver was legible, and the action was barred by the doctrine of primary assumption of the risk.

## DISCUSSION

Honeycutt makes two arguments on appeal.  First, she argues there is a triable issue of material fact because Alexander's act of grabbing her leg increased the inherent risk in kickboxing, which would negate application of the doctrine of primary assumption of the risk.  Second, she contends there is a triable issue of material fact regarding

whether Alexander acted with gross negligence, which would render ineffective her signed release of liability.

*Standard of Review*

"A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)  We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports.  (*Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 612.)  In the trial court, once a moving defendant has 'shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established,' the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff 'may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .'  (Code Civ. Proc., § 437c, subd. (o)(2); see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854-855.)"  (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476-477.)

*Primary Assumption of the Risk*

"California's abandonment of the doctrine of contributory negligence in favor of comparative negligence (*Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804) led to a reconceptualization of the assumption of risk.  In *Knight v. Jewett* (1992) 3 Cal.4th 296 (*Knight*), a plurality of this court explained that there are in fact two species of assumption of risk: primary and secondary.  (*Id.* at pp. 308-309 (plur. opn. of George, J.).)  Primary assumption of the risk arises when, as a matter of law and policy, a defendant owes no duty to protect a plaintiff from particular harms.  (*Ibid.*)  [Fn.

6

omitted.]  Applied in the sporting context, it precludes liability for injuries arising from those risks deemed inherent in a sport; as a matter of law, others have no legal duty to eliminate those risks or otherwise protect a sports participant from them.  (*Id.* at pp. 315-316.)  Under this duty approach, a court need not ask what risks a particular plaintiff subjectively knew of and chose to encounter, but instead must evaluate the fundamental nature of the sport and the defendant's role in or relationship to that sport in order to determine whether the defendant owes a duty to protect a plaintiff from the particular risk of harm.  (*Id.* at pp. 313, 315-317.)  A majority of this court has since embraced the *Knight* approach.  (*Kahn v. East Side Union High School Dist.* [(2003)] 31 Cal.4th [990,] 1004-1005; *Cheong v. Antablin* (1997) 16 Cal.4th 1063, 1067-1068.)"  (*Avila v. Citrus Community College Dist.* (2006) 38 Cal.4th 148, 161 (*Avila*).)

Our Supreme court has "established that coparticipants have a duty not to act recklessly, outside the bounds of the sport (*Knight, supra,* 3 Cal.4th at pp. 318-321), and coaches and instructors have a duty not to increase the risks inherent in sports participation (*Kahn v. East Side Union High School Dist., supra,* 31 Cal.4th at pp. 1005-1006) . . . ."  (*Avila*, *supra*, 38 Cal.4th at p. 162.)  "A sports instructor may be found to have breached a duty of care to a student or athlete only if the instructor intentionally injures the student or engages in conduct that is reckless in the sense that it is 'totally outside the range of the ordinary activity' [citation] involved in teaching or coaching the sport."  (*Kahn v. East Side Union High School Dist., supra,* at p. 996.)  "[T]he legal question of duty, and specifically the question of whether a particular risk is an inherent part of a sport, 'is necessarily reached from the common knowledge of judges, and not the opinions of experts.' [Citation.]"  (*Rosencrans v. Dover Images, Ltd.* (2011) 192 Cal.App.4th 1072, 1083, quoting *Staten v. Superior Court* (1996) 45 Cal.App.4th 1628, 1635.)

7

*Application of Primary Assumption of the Risk*

Honeycutt makes no argument that Alexander intentionally injured her, which focuses the issue presented to whether Alexander engaged in reckless conduct totally outside the range of ordinary activity in the sport. There is no evidence Alexander engaged in conduct of a reckless nature. The uncontroverted facts show Honeycutt was performing roundhouse kicks along with other students, Alexander saw that she was performing the kicks incorrectly, and he took steps to assist her in proper execution of the movement. Injuries to shoulders, hands, and knees are risks inherent in a vigorous, physical activity such as kickboxing. These types of injuries are entirely foreseeable, with or without the physical intervention of an instructor.

Based upon the nature of the specific activity resulting in Honeycutt's injury and the parties' relationship to that activity, the injury falls squarely within the doctrine of primary assumption of the risk. In *Lilley v. Elk Grove Unified School Dist.* (1998) 68 Cal.App.4th 939, a high school student suffered a broken arm when his instructor demonstrated a wrestling technique on him during a practice session. The fact that the plaintiff was injured by an instructor did not preclude application of primary assumption of risk to the injury plaintiff suffered during practice. (*Id.* at pp. 943-944.) "Wrestling is a sport involving two persons who grab, twist, throw or otherwise exert forces and holds upon each other's heads, necks, arms, legs, feet and torsos, with the object of forcing the opponent to the mat and pinning him in what usually is an awkward position. All the while, they strain their bodies in order to extract themselves from precarious positions. The type of injury plaintiff suffered while participating in the demonstration of a common wrestling technique is an inherent risk of wrestling." (*Id.* at p. 943.)

Similar reasoning was employed in *Bushnell v. Japanese-American Religious & Cultural Center* (1996) 43 Cal.App.4th 525 (*Bushnell*), in which a judo student suffered a broken leg when thrown by his instructor. The student "was engaged in an active sport" and was "attempting to improve his skills . . . ." (*Id.* at p. 531.) "That an instructor might ask a student to do more than the student can manage is an inherent risk of the activity.

8

Absent evidence of recklessness, or other risk-increasing conduct, liability should not be imposed simply because an instructor asked the student to take action beyond what, with hindsight, is found to have been the student's abilities.  To hold otherwise would discourage instructors from requiring students to stretch, and thus to learn, and would have a generally deleterious effect on the sport as a whole." (*Id.* at p. 532; see also *Kane v. National Ski Patrol System, Inc.* (2001) 88 Cal.App.4th 204, 211 ["The reasoning set forth in *Knight* . . . has been repeatedly used to shield sports instructors and coaches from liability," citing *Lupash v. City of Seal Beach* (1999) 75 Cal.App.4th 1428, 1440, *Aaris v. Las Virgenes Unified School Dist.* (1998) 64 Cal.App.4th 1112, 1119-1120; *Allan v. Snow Summit, Inc.* (1996) 51 Cal.App.4th 1358, 1369, and *Bushnell*, *supra*, 43 Cal.App.4th at p. 532].)

Our Supreme Court has made clear that there is no tort liability for injuries resulting from risks inherent in a sport, going so far as to hold in *Avila*, *supra*, 38 Cal.4th 148, that primary assumption of the risk bars liability even when a pitcher intentionally throws a baseball at an opposing batter.   The *Avila* court held "[i]t is true that intentionally throwing at a batter is forbidden by the rules of baseball," but the doctrine of primary assumption of the risk applies because "being intentionally thrown at is a fundamental part and inherent risk of the sport of baseball.  [Fn. omitted.]  It is not the function of tort law to police such conduct."  (*Id.* at p. 165.)

Nothing comparable to what took place in *Avila*, *supra*, 38 Cal.4th 148, occurred in this case.  Honeycutt engaged in a kickboxing class, with its inherent risk of a variety of injuries.  Honeycutt could have suffered the exact same knee injury in the kickboxing class without Alexander grabbing her leg.  Alexander's conduct did not increase the risks already inherent in the sport.  The doctrine of primary assumption of the risk applies in these circumstances.

*Gross Negligence*

Honeycutt further argues there is a triable issue of material fact whether Alexander acted with gross negligence when he held her leg and directed her to rotate without demonstrating the maneuver. We disagree. There is no evidence of gross negligence in this case. "'Gross negligence' long has been defined in California and other jurisdictions as either a 'want of even scant care' or 'an extreme departure from the ordinary standard of conduct.' [Citation.]" (*City of Santa Barbara v. Superior Court* (2007) 41 Cal.4th 747, 754.)

Meridian's evidence established that Alexander was attempting to help Honeycutt correctly execute the roundhouse kick, because he felt she might injure herself. This version of events does not amount to any form of negligence. On the other side, Honeycutt presented the declaration from its expert, Valentine, who stated an instructor should not touch the student, and instead should demonstrate and verbalize the maneuver and regress to an easier maneuver if the kick was too difficult for the student's skills. Valentine's declaration establishes no more than a dispute over whether Honeycutt was properly instructed by Alexander. "Instruction takes many forms, and not all are verbal." (*Saville v. Sierra College* (2005) 133 Cal.App.4th 857, 871.) A mere difference of opinion as to how a student should be instructed does not constitute evidence of gross negligence. (See *Decker v. City of Imperial Beach* (1989) 209 Cal.App.3d 349, 359-362 [training and use of what plaintiff's evidence shows is a disfavored method of rescue does not establish gross negligence].) Valentines's declaration falls short of the demonstrating Alexander acted with scant care or an extreme departure from the ordinary standard of conduct.

The release signed by Honeycutt precludes liability for general negligence, and other than passing suggestions that the release was illegible, Honeycutt makes no argument on appeal that the release was invalid for any reason other than there is a material disputed fact over whether Alexander acted with gross negligence. Because we

find no disputed issue of material fact on the issue of gross negligence, we hold the release bars Honeycutt's negligence action.

## DISPOSITION

The judgment is affirmed.  Meridian is awarded costs on appeal.


KRIEGLER, J.

We concur:


MOSK, Acting P. J.


GOODMAN, J. *

---

\* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| TANYA HONEYCUTT, | B254180 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. LC095176) |
| v. | |
| MERIDIAN SPORTS CLUB, LLC dba MERIDIAN'S BODIES IN MOTION, | **ORDER CERTIFYING OPINION FOR PUBLICATION** |
| Defendant and Respondent. | |

THE COURT:

The opinion in the above-entitled matter filed on October 21, 2014, was not certified for publication in the Official Reports. Upon respondent's request and for good cause appearing, it is ordered that the opinion shall be published in the Official Reports.

Pursuant to California Rules of Court, rule 8.1105(b), this opinion is certified for publication.

_____

KRIEGLER, J.                    MOSK, Acting P. J.                    GOODMAN, J.[*]

_____

[*] Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.