[No. B134897. Second Dist., Div. Four. May 25, 2000.]

DONALD BOON et al., Plaintiffs and Appellants, v.
MILAGRO RIVERA, Defendant and Respondent.

1324

## COUNSEL

Lawrence J. Hanna for Plaintiffs and Appellants.

Hanger, Levine & Steinberg and Paul V. Ash for Defendant and Respondent.

## OPINION

**RUBIN, J.***—Plaintiff Donald Boon (Boon), a Los Angeles police officer, was shot and injured by defendant Reynaldo Rivera (Reynaldo) after Boon had responded to a 911 call and encountered Reynaldo, who was barricaded inside the family home. Boon and his wife, Crystal Boon, brought this action asserting various tort theories against Rivera; his wife, Milagro Rivera (Milagro); and Pinegrove Hospital, Pinegrove Hospital/Pacific Hospital, and Pinegrove Behavorial Health Systems (collectively Pinegrove).

In this appeal, we address only the causes of action by Boon and his wife against Milagro for negligence, negligent infliction of emotional distress and loss of consortium.

### PROCEDURAL SETTING AND STATEMENT OF FACTS

On July 15, 1999, the trial court sustained Milagro's demurrer to plaintiffs' first amended complaint without leave to amend, and thereafter signed an order dismissing the case as to Milagro.[1] Plaintiffs appeal from the order of dismissal. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966 [9 Cal.Rptr.2d 92, 831 P.2d 317].)

Because the case comes to us upon the sustaining of a demurrer, we accept as true the facts alleged in the complaint. (*Zuniga v. Housing Authority* (1995) 41 Cal.App.4th 82, 90 [48 Cal.Rptr.2d 353].)

On January 15, 1998, Boon responded to a 911 call for police help initiated by a representative of Pinegrove. The emergency call was placed from the Reynaldo residence. Boon was the first officer to arrive at the scene, where Reynaldo had barricaded himself in the house. Boon initially encountered a social worker from Pinegrove who advised Boon that Reynaldo was not violent and that the police were overreacting.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] According to statements made by plaintiff's counsel at the hearing on the demurrer, plaintiffs had earlier dismissed the action against Pinegrove. Reynaldo attempted to join in the demurrer of his wife but the request was denied. No issue is presented here with respect to the claims against Reynaldo.

Shortly thereafter, Milagro also advised Boon and other officers that Reynaldo was not violent. She also stated that she had not taken all the guns from the residence and that she did not know the type or number of guns still in the house. Even though she knew there was an M-16 rifle and a gun safe in the house and that Reynaldo had threatened to kill the first police officer who arrived at the residence, she did not disclose those facts to the police. Boon relied on the information that Milagro conveyed to him and other officers that Reynaldo was not violent and, therefore, responded with non-lethal force. If he had been told the true facts about the threat, he would have responded with different tactics and with lethal force.

Instead, Reynaldo was able to point a firearm at Boon and fired several shots, striking Boon while he was either on or near the Rivera property. The gunshot wounds severely injured him. Thereafter, Reynaldo surrendered to the police.

Sometime later—the first amended complaint does not say where or when—Milagro told the police the following: Prior to the incident her husband had been diagnosed as a danger to himself or others.[2] He had threatened to shoot or kill the first police officer who showed up at the residence; her husband became nervous when he was around police officers; prior to the 911 call he had threatened to kill her and their child; a 30-day hold had earlier been placed on him; she had sought psychiatric intervention for him; and the weekend before the incident he had held a gun to her head and threatened to shoot her and their son, and as a result a social worker from Pinegrove had gone to the residence.

## DISCUSSION

Plaintiffs contend the trial court erred in sustaining the demurrer on the ground the "firefighter's rule" (see *Neighbarger v. Irwin Industries, Inc.* (1994) 8 Cal.4th 532 [34 Cal.Rptr.2d 630, 882 P.2d 347]) barred the action against Milagro. Defendant's brief takes a different tack. She contends that the firefighter's rule was tangential to the trial court's decision and that the court sustained the demurrer because it found Milagro owed no duty to Boon. ■ Regardless of how the parties characterize the trial court's decision, our job is simply stated: Although an appellate court exercises its independent judgment in reviewing a demurrer to determine whether the factual allegations of the complaint state a cause of action, we must affirm if

---

[2]The allegation in the first amended complaint states that Reynaldo "had been previously diagnosed as 5150." By that we assume, plaintiffs were referring to Welfare and Institutions Code section 5150 which authorizes a 72-hour hold where there is probable cause to believe a person is a danger to himself or others or is gravely disabled.

the trial court's decision to sustain the demurrer was correct on any theory. (*Trinkle v. California State Lottery* (1999) 71 Cal.App.4th 1198, 1201 [84 Cal.Rptr.2d 496].)

Accordingly we address the contentions of the parties separately.

## A. *Firefighter's Rule*

"Stated in its most traditional terms, the firefighter's rule 'is that which negates liability to firemen by one whose negligence causes or contributes to the fire which in turn causes the death or injury of the fireman.' [Citation.]" (*Calatayud v. State of California* (1998) 18 Cal.4th 1057, 1061 [77 Cal.Rptr.2d 202, 959 P.2d 360].) The legal foundation for this principle is that "a member of the public who negligently starts a fire owes no duty of care to assure the firefighter who is summoned to combat the fire is not injured thereby." (*Neighbarger v. Irwin Industries, Inc., supra,* 8 Cal.4th at p. 538.) The same rule applies when it is a police officer who responds to an emergency call. A member of the public whose conduct precipitates the intervention of a police officer does not owe a duty of care to the officer "with respect to the original negligence that caused the officer's intervention." (*Ibid.*)

The rationale for the rule is founded in the very nature of the work of firefighters, police officers and other emergency personnel: As a matter of fairness, such persons may not complain of the very negligence that makes their employment necessary. (*Walters v. Sloan* (1977) 20 Cal.3d 199, 204-205 [142 Cal.Rptr. 152, 571 P.2d 609].) In other words, firefighters and police officers generally assume the risk of injury when they respond to emergencies even though the negligence or other wrongdoing of another caused the event to which they are summoned. (*Calatayud v. State of California, supra,* 18 Cal.4th 1057, 1063; *Neighbarger v. Irwin Industries, Inc., supra,* 8 Cal.4th 532, 538.)

However, the rule is marked with exceptions, for a public safety officer does not assume every risk. (*Lipson v. Superior Court* (1982) 31 Cal.3d 362, 366 [182 Cal.Rptr. 629, 644 P.2d 822].) "The rule does not apply to conduct other than that which necessitated the summoning of the firefighter or police officer, and it does not apply to independent acts of misconduct that are committed after the firefighter or police officer has arrived on the scene." (*Neighbarger v. Irwin Industries, Inc., supra,* 8 Cal.4th at p. 538.)

This principle, although its genesis is in case law (see discussion in *Neighbarger v. Irwin Industries, Inc., supra,* 8 Cal.4th 532, 538-541), has

been codified in Civil Code section 1714.9, which negates the firefighter's rule whenever the conduct causing injury occurs after the defendant is aware of the officer's presence.[3]

The distinction between negligence or other wrongful conduct occurring *before* the officer's arrival on the scene (recovery for which is barred under the firefighter's rule) and that occurring *after* the officer's presence (recovery for which is not barred) can be found in a number of cases. For example in *Shaw v. Plunkett* (1982) 135 Cal.App.3d 756 [185 Cal.Rptr. 571], the rule was held not to bar a tort action by a police officer who, while arresting a prostitute, was hit by a vehicle driven by her alleged customer. In *Spargur v. Park* (1982) 128 Cal.App.3d 469, 475 [180 Cal.Rptr. 257], a motorcycle officer, upon pulling in front of the defendant whom he intended to cite for speeding, was hit by the defendant's car. In reversing summary judgment in favor of the defendant, the appellate court stated: "One of the situations where . . . recovery against a tortfeasor is not barred is where the injury is caused by a separate, independent act of either a third person or the person creating the original circumstance to which the police officer is called." (See also *Gibb v. Stetson* (1988) 199 Cal.App.3d 1008, 1015 [245 Cal.Rptr. 283] [firefighter's rule did not apply to altercation between prisoner and bailiff because prisoner was aware of bailiff's presence before assault]; but see *Seibert Security Services, Inc. v. Superior Court* (1993) 18 Cal.App.4th 394, 408-409 [22 Cal.Rptr.2d 514] [firefighter's rule applies to conduct occurring after the officer is present but before he has undertaken his duties of protection or crime prevention].)

In *Lipson v. Superior Court, supra,* 31 Cal.3d 362, our Supreme Court refused to apply the firefighter's rule to bar recovery to a firefighter under facts remarkably similar to the case before us. *Lipson,* too, dealt not with negligence based on physical conduct by the defendant but based on misrepresentation of a known hazard to which emergency personnel were summoned. There, a firefighter was called to the scene of a chemical boilover at the defendants' plant. In attempting to contain the boilover, which was caused by the defendants' negligence, the firefighter was severely injured.

---

[3]Civil Code section 1714.9 provides in part: "(a) Notwithstanding statutory or decisional law to the contrary, any person is responsible not only for the results of that person's willful acts causing injury to a peace officer, firefighter, or any emergency medical personnel employed by a public entity, but also for any injury occasioned to that person by the want of ordinary care or skill in the management of the person's property or person, in any of the following situations: [¶] (1) Where the conduct causing the injury occurs after the person knows or should have known of the presence of the peace officer, firefighter, or emergency medical personnel. [¶] . . . [¶] (3) Where the conduct causing the injury was intended to injure the peace officer, firefighter, or emergency medical personnel." (Civ. Code, § 1714.9, subd. (a)(1) & (3).) All statutory references are to the Civil Code unless otherwise noted.

The plaintiff alleged that his injuries were caused not by the negligence in permitting the boilover to occur in the first place, but were due to the defendants' negligent or intentional misrepresentations of the nature of the hazard presented. The plaintiff asserted that, when he arrived at the plant, defendants told him that the spill did not involve toxic chemicals or materials and that there would be no danger in attempting to contain the boilover. This was false, as toxic chemicals were implicated. The fireman alleged that if he had been told the true nature of the hazard, he would have taken adequate measures to ensure his safety.

The defendants moved for summary judgment, asserting the firefighter's rule. The trial court denied the motion, and the defendants sought a writ of mandate in the Supreme Court. In distinguishing cases applying the rule where the negligent conduct was the event for which the public safety officials were originally summoned to the scene, the court stated: "Smoke, flames and the collapse of a burning wall, ceiling, or floor are typical risks normally associated with a fireman's occupation. [Citation.] However, the risk that the owner or occupier of a burning building will deceive a firefighter as to the nature of the existence of a hazard on the premises is not an inherent part of a firefighter's job. A fireman cannot reasonably be expected to anticipate such misconduct on the part of an owner or occupier of a building." (*Lipson v. Superior Court, supra,* 31 Cal.3d at p. 371.)

The Supreme Court denied the writ, holding: "Thus, the principle of assumption of risk, which forms the theoretical basis for the fireman's rule, is not applicable where a fireman's injuries are proximately caused by his being misled as to the nature of the danger to be confronted. [Citations.]" (*Lipson v. Superior Court, supra,* 31 Cal.3d at p. 371.)

■ The factual similarities between *Lipson* and the instant case are palpable. Here, Boon was summoned to an emergency that presented a barricaded man in a home with weapons, much like the chemical conflagration facing the firefighter in *Lipson.* As did the fireman, Boon discussed the nature of the emergency with persons on the scene. As part of that discussion, Milagro misstated material facts. Even though she knew that Reynaldo had an M-16 in the house; had threatened to kill the first officer on the scene; had been declared a danger to himself or others; and had recently held a gun to her head, threatening to kill her and their child, she did not mention those facts but instead told the officer he was not violent. As was the case in *Lipson,* where the fireman relied on the false statement that the chemicals were not toxic and did not take adequate safety precautions, Boon alleges here that he relied on Milagro's statement that Reynaldo was not violent and therefore used nonlethal force, as a result of which he sustained injuries.

To paraphrase *Lipson*, a police officer may expect force, even deadly force, in responding to an emergency call of a barricaded man, but the risk that someone at the scene will deceive the officer as to the nature of the violent tendencies of the person inside is not an inherent risk of a police officer's job. An officer cannot reasonably be expected to anticipate such misconduct. Accordingly, we conclude the firefighter's rule does not bar plaintiffs' claims against Milagro.

### B. *Duty of Care Owed by Milagro*

█ Defendant contends that even if the firefighter's rule does not bar recovery against her, traditional analysis of duty of care requires the same result. Although defendant argues that the duty inquiry must proceed separately, such isolation is inappropriate since, as we have noted, the firefighter's rule itself is a limitation on traditional duty principles, and, as we shall explain, the codification of the rule is a *statement* of duty, not an *exception* to it. Nevertheless, we start our discussion in the manner suggested by defendant.

Section 1714 provides the statutory definition of duty in an ordinary negligence case: "Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person . . . ." (§ 1714, subd. (a).) Our Supreme Court has characterized this duty thus: "As a general rule, persons have a duty to use due care to avoid injury to others, and may be held liable if their careless conduct injures another person." (*Knight v. Jewett* (1992) 3 Cal.4th 296, 315 [11 Cal.Rptr.2d 2, 834 P.2d 696].)

Specifically as to the duty of care owed to police officers and emergency personnel, section 1714.9 provides that "any person is responsible not only for the results of that person's willful acts causing injury to a peace officer . . . but also for any injury occasioned to that person by the want of ordinary care or skill in the management of the person's property or person . . . [¶] [w]here the conduct causing the injury occurs after the person knows or should have known of the presence of the peace officer . . . ." (§ 1714.9, subd. (a) & (a)(1).)

Although most of the cases analyzing the effect of section 1714.9 treat it as stating an exception to the firefighter's rule (e.g., *Gibb v. Stetson, supra*, 199 Cal.App.3d 1008, 1014-1015), the Supreme Court has more accurately described the effect of the statute as reimposing "a duty of ordinary care (see § 1714), which would otherwise be abrogated by the firefighter's rule."

(*Calatayud v. State of California, supra,* 18 Cal.4th 1057, 1068.) Thus, the statute establishes a duty of care owed by persons to public safety officers.

In *Lipson,* the Supreme Court upheld the existence of a duty owed by those at the scene of an emergency to refrain from misrepresenting material facts about the nature of the hazard to the public safety officers who were present. (*Lipson v. Superior Court, supra,* 31 Cal.3d 362, 371 [182 Cal.Rptr. 629, 644 P.2d 822].) The court relied in part on Labor Code section 3852, the predecessor to section 1714.9, which at the time contained a virtually identical recitation of the duty owed to emergency personnel as is now set out in section 1714.9. (*Lipson, supra,* 31 Cal.3d at p. 373, fn. 8; see Deerings Ann. Lab. Code (1991 ed.) foll. § 3852, 1982 Amendments (ch. 258), p. 195.)

We thus conclude that section 1714.9, in the context of the present factual setting, establishes a duty by those present at the scene of an emergency to refrain from misstating material facts concerning the nature of the emergency to those public safety officials present.

Defendant argues that she cannot be held liable because she had no duty to control the criminal acts of another under the principles expressed in *Wise v. Superior Court* (1990) 222 Cal.App.3d 1008 [272 Cal.Rptr. 222]. In *Wise,* motorists injured by a sniper firing from the roof of his home sued the sniper's wife for, among other things, negligently failing to prevent the attack. Another division of this court affirmed the sustaining of the demurrer. The plaintiffs had alleged that the defendant wife was negligent in that she permitted her husband to occupy the house, knowing that he was a "human time bomb"; provided him access to the means to commit his rampage; failed to supervise him; and did nothing to protect or warn others within the zone of danger created. The appellate court held that the wife owed no duty to the plaintiffs because there was no special relationship among the parties that required the wife to control the conduct of her husband and neither the victims nor the harm was foreseeable. (*Id.* at pp. 1013-1015; see also *Eric J. v. Betty M.* (1999) 76 Cal.App.4th 715, 727-730 [90 Cal.Rptr.2d 549].)

In *Wise* the issue was whether liability could be predicated on a failure to warn. Here, however, plaintiffs contend Milagro not only failed to warn, she made a materially false statement when she said her husband was not violent. Thus, the instant case is more factually similar to that presented in *Pamela L. v. Farmer* (1980) 112 Cal.App.3d 206 [169 Cal.Rptr. 282]. There, the husband and the wife were sued for acts of child molestation allegedly committed by the husband. The wife's demurrer was sustained by the trial court but reversed on appeal. The complaint alleged, among other things,

that the wife encouraged the child victims to come onto her premises and use her swimming pool by telling their parents that it was perfectly safe when she was not there because her husband would be present. The complaint also alleged that prior to these invitations the wife had known that her husband had molested women and children in the past and that her husband intended to commit similar acts with these children unless otherwise prevented.

The wife argued the general rule that a person has no duty to control the criminal acts of a third person or to warn those endangered by such conduct absent a "special relationship." However, the court observed that this principle "is based on the concept that a person should not be liable for 'nonfeasance' in failing to act as a 'Good Samaritan.' It has no application where the defendant, through his or her own action (misfeasance) has made the plaintiff's position worse and has created a foreseeable risk of harm from the third person. In such cases the question of duty is governed by standards of ordinary care." (*Pamela L. v. Farmer, supra,* 112 CalApp.3d at p. 209.) In reversing the sustaining of the demurrer, the court relied in part on "Restatement Second of Torts section 302B which provides: 'An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.' " (*Id.* at pp. 209-210.) The court concluded that the wife did not merely fail to prevent harm or warn of it (as was the case in *Wise*); her own acts, including the statement that it was safe for the children to swim on her property, had the effect of increasing the risk of such harm occurring.

The distinction between the finding of the absence of duty in the failure to warn setting (*Wise)* but upholding a duty where there is an affirmative misrepresentation (*Pamela L.*) has been reviewed in two recent cases. (See *Eric J. v. Betty M., supra,* 76 Cal.App.4th 715, 727-730; *Hansra v. Superior Court* (1992) 7 Cal.App.4th 630, 640-642 [9 Cal.Rptr.2d 216].) Both cases dealt with claims against defendants whose family members had committed criminal acts and where liability was sought on a failure to warn theory. In each case, the appellate court found no duty, distinguishing *Pamela L.* because of the latter's affirmative misrepresentation.

Neither side has provided us with any authority applying these principles in the context of an assault on a police officer responding to an emergency call. However, recently, another division of this court had occasion to address the subject generally in that setting.

In *Tilley v. Schulte* (1999) 70 Cal.App.4th 79 [82 Cal.Rptr.2d 497], Officer Tilley was responding to a call of "shots being fired." He thought he heard

the sound of fireworks coming from the home of Barry Mora and drove up Mora's driveway to inquire about the shots. Tilley and Mora had had friendly encounters in the past. Tilley did not observe Mora holding a shotgun to his side, and Mora shot Tilley several times, severely injuring him. Mora had been under psychiatric care for the previous six months and had been diagnosed as homicidal. He told his psychiatrist, defendant Dr. Schulte, that he had homicidal feelings towards his supervisor at the California Youth Authority. Dr. Schulte did not ask Mora if he had a gun or whether he had other means to carry out his feelings. Dr. Schulte did not warn Mora's supervisors or advise law enforcement authorities.

Officer Tilley sued Dr. Schulte for negligence. Division Six of this court affirmed the granting of summary adjudication of issues in favor of Dr. Schulte. The court first concluded that the firefighter's rule barred recovery. Specifically, as to the application of section 1714.9, the court noted that the alleged negligence of Dr. Schulte (the failure to warn) occurred not after the officer arrived at the scene, but before. (*Tilley v. Schulte, supra,* 70 Cal.App.4th at p. 85.) With respect to the elements of a prima facie negligence claim, the court found the connection between Mora's homicidal feelings toward his supervisor and his attack many months later against Officer Tilley to be attenuated, especially considering the friendly relationship the two previously enjoyed. An assault on Tilley could not be seen as a foreseeable result of the general homicidal feelings that Mora had earlier expressed. Nevertheless, the opinion reaffirmed the principle announced in *Lipson,* thus suggesting that if affirmative malfeasance had occurred after the officer had arrived at the scene, the result would have been different: "One who negligently or intentionally misrepresents the nature of a hazard to public safety officers may be held liable in damages for injuries sustained as a result of such misrepresentation." (*Ibid.*)

In *Tilley,* the court concluded an attack on the officer was not a foreseeable result of the doctor's conduct. Here, both the victim (Boon) and the harm (an immediate assault by an armed Reynaldo) were foreseeable given Milagro's affirmative misrepresentation that Reynaldo was not violent despite his known threats to kill an officer and other violent propensities.

Based on the facts alleged, we conclude Milagro owed a duty of care to Boon not to misrepresent affirmatively the nature of the hazard that he had encountered.

C. *Other Contentions*

Defendant argues that, given the exigencies and dangers of the incident, and the circumstances leading up to Reynaldo's barricading himself in the

family home with weapons, it was not unreasonable for Milagro to fail to provide complete and accurate information to the police.

"Plaintiff would have the Court believe that a reasonable person placed in Ms. Rivera's shoes would have the presence of mind to relate all incidents that might or might not be helpful to them, to the police within seconds of arriving at the scene. [The trial court] properly focused on Ms. Rivera's state of mind at the time she was questioned and what response the reasonable person placed in her position would have made."

If by this argument defendant suggests that we may conclude as a matter of law Milagro was not negligent when she told Boon her husband was not violent, we decline the invitation. ▊ Whether or not certain conduct was unreasonable, i.e., whether it constituted a breach of the standard of care, and whether it was a legal cause of injury, are normally questions of fact. (*Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 864 [64 Cal.Rptr.2d 324].) Such a factual determination is not appropriate on demurrer.

Milagro contends that the first amended complaint fails to state a cause of action by Crystal Boon for negligent infliction of emotional distress. The first amended complaint is confusing in this respect. In their caption to the fourth cause of action, plaintiffs state that the claim is asserted on behalf of Donald Boon. Paragraph 53 of the fourth cause of action, however, states that as a result of the alleged conduct, both plaintiffs suffered damages. Milagro argues that no claim is stated based on *Thing v. La Chusa* (1989) 48 Cal.3d 644 [257 Cal.Rptr. 865, 771 P.2d 814]. Plaintiffs do not contend otherwise. We agree that Crystal Boon has not stated a cause of action for negligent infliction of emotional distress under either bystander or direct liability theories, and that the demurrer to that cause of action by Crystal Boon was properly sustained.

As to Donald Boon's cause of action for negligent infliction of emotional distress and Crystal Boon's cause of action for loss of consortium, Milagro argues only that they suffer from the same defects as the negligence claim. Accordingly, and because we conclude that the negligence claim is legally sufficient, the sustaining of the demurrer to Donald Boon's negligent infliction of emotional distress claim and to Crystal Boon's cause of action for loss of consortium was likewise improper.

Finally, Milagro contends that all three causes of action are uncertain. Although the factual recitals in the complaint are not airtight, they apprise defendant of the issues she is to meet and, therefore, are not legally uncertain. (5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 929 p. 388.)

## DISPOSITION

The judgment is reversed. The matter is remanded to the trial court to vacate the order sustaining the demurrers to the causes of action against Milagro and to enter a new and different order, overruling the demurrer to the third cause of action by Donald Boon against Milagro Rivera, overruling the demurrer to the fourth cause of action by Donald Boon against Milagro Rivera, sustaining the demurrer to the fourth cause of action by Crystal Boon against Milagro Rivera, and overruling the demurrer to the sixth cause of action by Crystal Boon against Milagro Rivera.

Appellants shall recover their costs on appeal.

Hastings, Acting P. J., and Curry, J., concurred.