[No. E031683. Fourth Dist., Div. Two. July 23, 2003.]

BARBARA ANN HAMILTON, Plaintiff and Appellant, v.
MARTINELLI & ASSOCIATES et al., Defendants and Respondents.

1014

## COUNSEL

Tomlinson, Nydam and Prince and Timothy P. Prince for Plaintiff and Appellant.

Michael P. Stone and Marc J. Berger for Defendants and Respondents.

## OPINION

## KING, J.—

### 1. INTRODUCTION

Plaintiff appeals from a summary judgment entered in favor of defendants Ronald Martinelli (Martinelli) and Martinelli & Associates Justice Consultants, Inc. (Martinelli & Associates) (collectively defendants), on plaintiff's complaint for personal injuries based on negligence and intentional tort. We affirm.

Plaintiff was employed as a probation corrections officer and peace officer with the San Bernardino County Probation Department (the Department). As a condition of her employment, she was required to participate in an "Unarmed Defensive Tactics" (UDT) training course. Defendant Martinelli instructed the course on behalf of Martinelli & Associates. Plaintiff suffered injuries to her neck and back while performing a training maneuver. As a result, she is no longer able to work as a probation corrections officer or peace officer.

The trial court concluded that the doctrine of primary assumption of risk barred plaintiff's negligence and intentional tort claims, and that Civil Code section 1714.9,[1] which sets forth specific exceptions to the firefighter's rule, did not apply. The trial court reasoned that "the undisputed facts establish that defendant[s] performed a training maneuver on plaintiff, and not an attack. Thus, the burden shifts to plaintiff to show that the maneuver was so violent or dangerous as to be outside the category of the training exercise. This she

---

[1] All further statutory references will be to the Civil Code unless otherwise noted.

has failed to do. There is no evidence that defendant[s] exceeded the boundaries of the normal risks associated with this type of training. Plaintiff's assertions to the contrary do not rise to the level of creating a triable issue of fact."

Plaintiff contends that there are triable issues of fact concerning whether defendants increased the risk of harm associated with the UDT training maneuver, and intentionally caused her injuries. She further contends that there are triable issues of fact concerning whether the exceptions to the firefighter's rule set forth in section 1714.9, subdivision (a)(1) and (3) apply, and whether the common law "independent acts" exception also applies.

We conclude that plaintiff assumed the risk of her injuries by participating in the UDT training course. We find no triable issue of material fact that defendants increased the risk of harm to plaintiff in performing the training maneuver, or intentionally caused plaintiff's injuries. We further conclude that the firefighter's rule also bars plaintiff's claims, and that none of its exceptions apply.

Plaintiff's public employment duties included restraining some violent juvenile offenders. Her training in the use of unarmed defensive tactics enabled her to perform these employment duties. In this opinion, we hold that under the doctrine of primary assumption of risk and the firefighter's rule, no duty is owed to a peace officer who is engaged in training to meet an emergency situation.

## 2. FACTS

### A. *Undisputed Facts*

Plaintiff was employed as a probation corrections officer in a youth detention center. This is a peace officer position. (Pen. Code, § 830.5.)[2] Plaintiff's employment duties included supervising and counseling children between the ages of 10 and 18, including violent offenders. She was required to wear a uniform and carry pepper spray. As a further condition of her employment, she was required to complete a UDT training course and pass a proficiency test.

In September 1999, plaintiff participated in a UDT training course that included instruction in "ground fighting maneuvers." Martinelli and one of his assistants instructed the course through Martinelli & Associates, under

---

[2] Penal Code section 830.5 confers peace officer status on probation officers while engaged in the performance of their duties and for the purpose of carrying out the primary functions of their employment.

contract with the Department. In previous years, plaintiff participated in similar UDT training courses taught by Martinelli.

The UDT training course was certified by the California Board of Corrections Standards and Training Commission (the STC). The STC sets uniform training standards for probation corrections officers. Martinelli was an STC-certified instructor for the UDT training course.

Plaintiff was injured in the UDT training course while she performed a maneuver called "reversal on stomach and choking officer" or "officer on stomach with arm-bar choke." The maneuver was designed to teach plaintiff to extricate herself if she was attacked, landed on her stomach, and was being choked by an assailant straddling her back. Martinelli played the role of the attacker.

Before beginning physical training, class participants were asked to identify prior injuries and sensitive areas of their bodies by placing silver tape on the identified areas. The maneuvers were demonstrated to the class before participants were instructed to perform them.

Plaintiff was not provided with a written disclaimer, warning, or consent form. Before plaintiff was injured, 10 other persons were injured in Martinelli's UDT classes, but plaintiff was not informed of these injuries.

The first time plaintiff performed the maneuver, she succeeded in throwing Martinelli off her back. Martinelli then instructed plaintiff to perform the maneuver faster. Plaintiff again successfully performed the maneuver, but felt pain in her neck when she stood up. She suffered "disabling physical injuries to her back and neck, including a herniated disc of the cervical spine." She filed a workers' compensation claim for her injuries and received benefits.

Plaintiff began working for the Department in April 1988 as a "group counselor." Shortly after she began her employment, she received " 'core training' on the administrative and physical requirements of her job and proper techniques for counseling and supervising the detainees, and in arrest and search and seizure techniques." In 1997, her job duties changed "from counseling and verbal skills into [emphasizing] physical restraint and superiority."

Plaintiff sued defendants for intentional tort and negligence. Defendants moved for summary judgment, based on the doctrine of primary assumption of risk and the firefighter's rule. The trial court granted the motion and entered judgment in favor of defendants.

B. *Additional Evidence*

Plaintiff claims that in performing the UDT training maneuver, Martinelli straddled her back, placed "a great deal of weight" on her back and spine, placed his arm around her neck and choked her, and "forced her to throw him off her back." She said Martinelli placed more weight on her than he had when she performed previous maneuvers.

Plaintiff also claims that "Martinelli's teaching techniques included intimidation, shame and yelling." She said Martinelli "harbored bitter feelings against [her] based on a prior dispute" and displayed "reckless and vindictive" indifference to her safety.

Plaintiff submitted a declaration by Patricia Lamb, a Department employee and certified police officer standards training instructor. Ms. Lamb opined that Martinelli's teaching methods "unnecessarily increase the risk of harm to trainees such as [plaintiff]." She also said "[t]he maneuvers Martinelli requires his trainees to perform ... are not mandated nor prescribed by STC." In Ms. Lamb's opinion, the maneuvers are "unnecessary and inappropriate in the context of mandatory training."

Plaintiff also submitted a declaration from Geoffrey Maline, another Department employee and peace officer. Mr. Maline suffered injuries to his back and neck after performing one of Martinelli's ground fighting maneuvers. He said that "[n]one of my training outside of Martinelli's course included 'dynamic' ground fighting maneuvers with an instructor on the trainee's back."

Although not found in plaintiff's response to defendants' undisputed statement of facts, plaintiff testified in her deposition that training in UDT was, in her opinion, not necessary for the performance of the essential functions of her job. She admitted, however, that some degree of training in restraining juveniles was necessary for her safety on the job.

### 3. DISCUSSION

A. *Standard of Review*

"The purpose of a motion for summary judgment is 'to discover whether the parties possess evidence requiring the fact-weighing procedures of a trial. [Citations.]' [Citation.] Code of Civil Procedure section 437c, subdivision (c) provides that a motion for summary judgment must be granted 'if all the papers submitted show that there is no triable issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law.' " (*City of Oceanside v. Superior Court* (2000) 81 Cal.App.4th 269, 273 [96 Cal.Rptr.2d 621].)

A moving party defendant is entitled to summary judgment if it establishes a complete defense to the plaintiff's causes of action, or shows that one or more elements of each cause of action cannot be established. The defendant must support its motion with affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken. (Code Civ. Proc., § 437c, subds. (b) & (o)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

Once the defendant has met its burden, the burden shifts to the plaintiff to show a triable issue of one or more material facts, or a defense thereto. The plaintiff may not rely upon the mere allegations in its complaint, but must set forth "specific facts" showing that a triable issue exists. (Code Civ. Proc., § 437c, subd. (p)(2).)

We review the trial court's decision de novo. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 [110 Cal.Rptr.2d 370, 28 P.3d 116].) "Because a summary judgment denies the adversary party a trial, it should be granted with caution." (*Colores v. Board of Trustees* (2003) 105 Cal.App.4th 1293, 1305 [130 Cal.Rptr.2d 347].) The moving party's papers are strictly construed, the opposing plaintiff's papers are liberally construed, and doubts as to whether summary judgment should be granted are resolved in favor of the opposing party. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 [107 Cal.Rptr.2d 617, 23 P.3d 1143].)

"Since the existence of the primary assumption of the risk is dependent upon the existence of a legal duty, and since duty is an issue of law to be decided by the court, the applicability of that defense is amenable to resolution by summary judgment. [Citation.] When a defendant moves for summary judgment on the basis of implied assumption of the risk, he or she has the burden of establishing the plaintiff's primary assumption of the risk by demonstrating that the defendant owed no legal duty to the plaintiff to prevent the harm of which the plaintiff complains." (*Freeman v. Hale* (1994) 30 Cal.App.4th 1388, 1395 [36 Cal.Rptr.2d 418] (*Freeman*).)

B. *The Doctrine of Primary Assumption of Risk Bars Plaintiff's Claims*

"As a general rule, persons have a duty to use due care to avoid injury to others, and may be held liable if their careless conduct injures another person." (§ 1714; *Knight v. Jewett* (1992) 3 Cal.4th 296, 315 [11 Cal.Rptr.2d 2, 834 P.2d 696] (*Knight*).) There are, however, exceptions to this rule, based on statute or public policy. (*Merrill v. Navegar, Inc., supra,* 26 Cal.4th at p. 477.)

■ One of these exceptions is the doctrine of primary assumption of risk. It bars any recovery by a plaintiff "when it can be established that, because of the nature of the activity involved and the parties' relationship to the activity, the defendant owed the plaintiff no duty of care." (*Neighbarger v. Irwin Industries, Inc.* (1994) 8 Cal.4th 532, 538 [34 Cal.Rptr.2d 630, 882 P.2d 347] (*Neighbarger*), citing *Knight, supra,* 3 Cal.4th at pp. 314–315.) The relationship of the parties to each other is also a consideration. (*Bushnell v. Japanese-American Religious & Cultural Center* (1996) 43 Cal.App.4th 525, 530 [50 Cal.Rptr.2d 671] (*Bushnell*).)

### (1) Primary Assumption of Risk in the Sporting and Recreational Context

The doctrine of primary assumption of risk has frequently been applied to injuries sustained in sporting and recreational activities. (See, e.g., *Knight, supra,* 3 Cal.4th at p. 320.) In these cases, "[a]lthough defendants generally have no legal duty to eliminate (or protect a plaintiff against) risks inherent in the sport itself … [they] generally do have a duty to use due care not to increase the risks to a participant over and above those inherent in the sport." (*Id.* at pp. 315–316.) In determining whether a defendant increased the risk of harm, the court assesses the nature and scope of the activity to gauge the normal risks associated with the activity. (*Solis v. Kirkwood Resort Co.* (2001) 94 Cal.App.4th 354, 365 [114 Cal.Rptr.2d 265].)

"[A] participant in an active sport breaches a legal duty of care to other participants … only if the participant intentionally injures another player or engages in conduct that is so reckless as to be totally outside the range of the ordinary activity involved in the sport." (*Knight, supra,* 3 Cal.4th at p. 320, fn. omitted.) "[C]onduct is totally outside the range of ordinary activity involved in [a] sport … if the prohibition of that conduct would neither deter vigorous participation in the sport nor otherwise fundamentally alter the nature of the sport." (*Freeman, supra,* 30 Cal.App.4th at p. 1394.)

In *Knight*, the defendant stepped on and injured the plaintiff's hand and finger while the two were playing touch football. The court affirmed a summary judgment in favor of the defendant, reasoning that the defendant's conduct was "at most, careless or negligent," but not "so reckless as to be totally outside the range of the ordinary activity involved in the sport," despite the plaintiff's characterization of the defendant's conduct as "reckless." (*Knight, supra,* 3 Cal.4th at pp. 320–321.)

In *Freeman*, the defendant collided with and injured another skier. The evidence showed the defendant had been drinking alcohol. The court held that the doctrine of primary assumption of risk did not bar the victim's

claims, because the defendant's drinking increased the inherent risks of a collision. The court reasoned that prohibiting drinking during or before skiing would not have deterred vigorous participation in the sport nor otherwise fundamentally altered its nature. (*Freeman, supra,* 30 Cal.App.4th at pp. 1396–1397.)[3]

In *Bushnell,* a student suffered a broken leg during a judo class as he "attempt[ed] to improve his skills by working more and more quickly through the 'tai otoshi' maneuver" with his instructor. (*Bushnell, supra,* 43 Cal.App.4th at pp. 531–532.) The student argued that his instructor moved more quickly than he expected and miscalculated the speed at which the student would be able to respond. (*Id.* at p. 532.)

The *Bushnell* court held that the doctrine of primary assumption of risk barred the student's claims. It reasoned that the doctrine of primary assumption of risk can apply "even if the defendant was in some manner in control of the situation and thus in a better position than the plaintiff to prevent the plaintiff's injury." (*Bushnell, supra,* 43 Cal.App.4th at p. 531.) It further reasoned that "[i]nstruction in an activity such as judo necessarily requires pushing a student to move more quickly, attempt a new move, or take some other action that the student previously may not have attempted. That an instructor might ask a student to do more than the student can manage is an inherent risk of the activity. *Absent evidence of recklessness, or other risk-increasing conduct,* liability should not be imposed simply because an instructor asked the student to take action beyond what, with hindsight, is found to have been the student's abilities. To hold otherwise would discourage instructors from requiring students to stretch, and thus to learn, and would have a generally deleterious effect on the sport as a whole." (*Id.* at p. 532, italics added.)

### (2) Primary Assumption of Risk in the Employment Context

The doctrine of primary assumption of risk has also been applied to employment-related activities. For example, in *Herrle v. Estate of Marshall* (1996) 45 Cal.App.4th 1761 [53 Cal.Rptr.2d 713] (*Herrle*), the plaintiff was a nurse's aide and an employee of a convalescent hospital. She was regularly exposed to patients who suffered from Alzheimer's disease and who could be combative and violent. She was injured when one of these patients struck her. (*Id.* at pp. 1763–1764.)

---

[3] See also *Allan v. Snow Summit, Inc.* (1996) 51 Cal.App.4th 1358 [59 Cal.Rptr.2d 813] (novice skier's lawsuit against ski school for inadequately preparing him to ski on more advanced ski run barred by primary assumption of risk); *Aaris v. Las Virgenes Unified School Dist.* (1998) 64 Cal.App.4th 1112 [75 Cal.Rptr.2d 801] (cheerleader's lawsuit against school for inadequately instructing her on safety and techniques for gymnastic stunts barred by primary assumption of risk).

The *Herrle* court held that the plaintiff assumed the risk of her injuries and that the patient did not owe the plaintiff a duty of care. It reasoned that the "plaintiff, by the very nature of her profession, placed herself in a position where she assumed the duty to take care of patients who were potentially violent and to protect such patients from committing acts which might injure others. The danger of violence to the plaintiff was rooted in the ' " ' " 'very occasion for [plaintiff's] engagement.' " ' " ' " (*Herrle, supra,* 45 Cal.App.4th at p. 1766.)[4] Thus, it has also been held that the doctrine of primary assumption of risk applies where " 'the defendant [is] impliedly relieved of any duty of care by the plaintiff's acceptance of employment involving a known risk or danger. [Citations.]' " (*Farnam v. State of California* (2000) 84 Cal.App.4th 1448, 1452 [101 Cal.Rptr.2d 642].)

### (3) Primary Assumption of Risk Applies in the Present Case

■ Plaintiff's neck and back injuries were an inherent risk of performing the UDT training maneuver. Moreover, plaintiff's employment duties entailed the very risk of injury of which she complains.

■ Plaintiff's employment duties included restraining violent juvenile offenders. She was required to wear a uniform and carry pepper spray. And since 1997, her job philosophy emphasized physical restraint of juveniles. Thus, the ability to physically restrain juveniles was a necessary tool in plaintiff's employment. By continuing in this employment capacity, plaintiff assumed the risk that she would be injured by a violent juvenile offender. And by participating in an employer-required training course, she assumed the risk that she would be injured while training to restrain a violent juvenile offender.

■ It is of no moment that plaintiff was not injured · while actually restraining a violent juvenile offender, but while training to restrain a violent juvenile offender. At least one court has noted that a distinction between practice and competition in the sports context "would make assumption of risk hinge upon the formality of the activity, not the activity itself." (*Staten v. Superior Court* (1996) 45 Cal.App.4th 1628, 1633, fn. 4 [53 Cal.Rptr.2d 657] [assumption of risk applies to injuries sustained while practicing for ice skating competition].) The same is true here. Training is essential to performance in the workplace, just as practice is essential to competition in the sports setting.

■ The evidence that plaintiff did not sign a written waiver, disclaimer, or consent form does not raise a triable issue of fact concerning whether

---

[4] See also *Cohen v. McIntyre* (1993) 16 Cal.App.4th 650, 655 [20 Cal.Rptr.2d 143] (veterinarian assumed risk of being bitten while examining dog); *Anicet v. Gant* (Fla.Dist.Ct.App. 1991) 580 So.2d 273, 275 (state hospital attendant assumed risk of being attacked by insane resident).

defendants increased the risk of harm. Nor does the evidence that other persons, including Mr. Maline, suffered injuries in defendants' other UDT training courses raise a triable issue of fact. A court's determination of the risk inherent in an activity does not depend on a particular plaintiff's "*subjective* knowledge or appreciation of the potential risk" inherent in the activity, or consent to or voluntary acceptance of that risk. (*Knight, supra,* 3 Cal.4th at p. 316, italics added; accord, *Herrle, supra,* 45 Cal.App.4th at pp. 1764, 1767, fn. 1.)

Nothing in Ms. Lamb's declaration raises a triable issue of material fact. She states that Martinelli's teaching methods "unnecessarily increase[d] the risk of harm to trainees such as [plaintiff]" and that the UDT training maneuvers were "unnecessary and inappropriate in the context of mandatory training." These statements are merely critical of the Department's policy of requiring plaintiff to learn UDT training maneuvers. They do not address whether the risk of physical injury to plaintiff is rooted in the "very occasion" of her employment.

As noted, plaintiff's employment duties included physically restraining juveniles. She was injured while participating in an STC-approved training course being taught by an STC-certified instructor hired by her employer. The STC sets uniform training standards for probation corrections officers. By participating in the UDT training course, plaintiff assumed the risk that she would be injured.

Additionally, plaintiff has failed to raise a triable issue of fact concerning whether defendants intentionally injured her. Her characterization of Martinelli's demeanor as "reckless and vindictive" does not establish that he intended to harm her in any way. The evidence that Martinelli instructed her to perform the UDT training maneuver faster and that he increased the pressure on her back are also insufficient to show an intent to harm, or an increased risk of harm.

Accordingly, we conclude that the doctrine of primary assumption of risk bars plaintiff's negligence and intentional tort causes of action. More generally, we conclude that the doctrine of primary assumption of risk applies to workplace activities, where the plaintiff is hired to confront the very risks that caused his or her injuries.

## C. *The Firefighter's Rule Also Bars Plaintiff's Claims*

 The firefighter's rule is a special rule that limits the duty of care that members of the public would otherwise owe to firefighters, police officers, other peace officers, and other public safety officers. (*Neighbarger, supra,*

8 Cal.4th at p. 538; *Calatayud v. State of California* (1998) 18 Cal.4th 1057, 1060, fn. 2, 1068–1072 [77 Cal.Rptr.2d 202, 959 P.2d 360] (*Calatayud*) [public safety members]; *Hodges v. Yarian* (1997) 53 Cal.App.4th 973, 979 [62 Cal.Rptr.2d 130] [peace officers].)

■ The firefighters rule is not a concept separate from the doctrine of assumption of the risk, but is "an example of the proper application of the doctrine of assumption of risk, that is, an illustration of when it is appropriate to find that the defendant owes no duty of care." (*Neighbarger, supra*, 8 Cal.4th at p. 538.) "The undergirding legal principle of the [firefighter's] rule is assumption of the risk ...." (*Calatayud, supra*, 18 Cal.4th at p. 1061.) "Stated in its most traditional terms, the firefighter's rule 'is that which negates liability to firemen by one whose negligence causes or contributes to the fire which in turn causes the death or injury of the fireman.' " (*Ibid.*)

There are at least four policy justifications for the firefighter's rule. First, "as a matter of fairness, police officers and firefighters may not complain of the very negligence that makes their employment necessary." (*Neighbarger, supra*, 8 Cal.4th at pp. 539–540.) Second, they are public employees who receive special salary, disability, and retirement benefits to compensate them for confronting the dangers posed by that negligence. (*Id.* at pp. 540, 543–544.) Third, permitting recovery by those public employees "would embroil the courts in relatively pointless litigation over rights of indemnification among the employer, the retirement system, and the defendants' insurer." (*Id.* at p. 540.) Fourth, the firefighter's rule is also " 'based upon a public policy decision to meet the public's obligation to its officers collectively through tax-supported compensation rather than through individual tort recoveries. This spreads the costs of injuries to public officers among the whole community, making the public in essence a self-insurer against those wrongs that any of its members may commit.' [Citations.]" (*Calatayud, supra*, 18 Cal.4th at p. 1062.)

"[T]he cost-spreading rationale is one of the critical public policy reasons underlying the firefighter's rule." (*Calatayud, supra*, 18 Cal.4th at p. 1070.) For this reason, "public safety officers, whose occupation necessarily exposes them to certain risks of injury, cannot complain of negligent acts that create the very reason for their employment. [Citations.] [They] are compensated through public benefits for injuries sustained in the line of duty. If they were also permitted private recovery for those injuries, the public would in effect pay the bill twice: first through taxes and then from insurance. [Citations.]" (*Yamaguchi v. Harnsmut* (2003) 106 Cal.App.4th 472, 479–480 [130 Cal.Rptr.2d 706] (*Yamaguchi*).) "When a peace officer assumes responsibility for performing such functions and is injured in the process, his or her

recourse is in the system of 'special public benefits' established to compensate the officer for such injuries." (*Hodges v. Yarian, supra,* 53 Cal.App.4th at p. 985.)

Here, the policy justifications for the firefighter's rule clearly apply. Plaintiff is a publicly employed peace officer who was injured while training to perform the duties of her employment. As we explained above in our discussion of primary assumption of risk, training is essential to performance in the workplace. Plaintiff's UDT training was no less a part of her employment duties than actually restraining a juvenile offender in an emergency.

Thus, the firefighters' rule, like the doctrine of primary assumption of risk, bars plaintiff's claims. More generally, we conclude that the firefighter's rule extends not only to risk of injury while responding to emergency situations, but also to the risks of injury while training to respond to those emergencies.

D. *None of the Exceptions to the Firefighter's Rule Apply to Create a Duty of Care*

There are exceptions to the firefighter's rule, based on decisional law and statute. The exceptions reimpose a duty of care that the firefighter's rule would otherwise negate. (*Calatayud, supra,* 18 Cal.4th at p. 1068; see also *Boon v. Rivera* (2000) 80 Cal.App.4th 1322, 1330–1331 [96 Cal.Rptr.2d 276] (*Boon*).)

(1) The Independent Acts Exception

██ The "independent acts" exception is a creature of decisional law. It recognizes that "[t]he firefighter does not assume every risk of his or her occupation. [Citation.] The rule does not apply to conduct other than that which necessitated the summoning of the firefighter or police officer, and it does not apply to independent acts of misconduct that are committed after the firefighter or police officer has arrived on the scene." (*Neighbarger, supra,* 8 Cal.4th at p. 538.) "Unless the [peace officer] has come to a specific location to perform a specific immediate duty, and the defendant's unrelated negligent or intentional conduct increases the risks inherent in performing that duty [citations], this exception is ... inapplicable." (*Seibert Security Services, Inc. v. Superior Court* (1993) 18 Cal.App.4th 394, 411 [22 Cal.Rptr.2d 514] (*Seibert*).)[5]

---

[5] See also *Terry v. Garcia* (2003) 109 Cal.App.4th 245, 252–253 [134 Cal.Rptr.2d 565] (independent acts exception applied where negligence complained of did not summon officer to scene); *Vasquez v. North County Transit Dist.* (9th Cir. 2002) 292 F.3d 1049, 1058 (independent cause exception requires "two separate negligent acts"); *Donohue v. San Francisco Housing Authority* (1993) 16 Cal.App.4th 658, 663 [20 Cal.Rptr.2d 148] (same).

Here, plaintiff was summoned to the scene of her injuries to receive UDT training, as a condition of her employment. And by attending the UDT training course, plaintiff assumed the risk that she would be injured during the course of the training. Defendants' alleged negligent conduct was not independent of the training. Nor did it increase the risk of injury inherent in the training. Rather, defendants' alleged negligent conduct was an integral part of the training. Accordingly, the independent acts exception does not apply. Plaintiff was not injured by conduct other than that which necessitated her presence at the scene of the UDT training course.

### (2) Section 1714.9, Subdivision (a)(1)

Plaintiff principally relies on the statutory exception to the firefighter's rule set forth in section 1714.9, subdivision (a)(1). The statute provides, in pertinent part, that "[n]otwithstanding statutory or decisional law to the contrary, any person is responsible not only for the results of that person's willful acts causing injury to a peace officer ... but also for any injury occasioned to that person by the want of ordinary care or skill in the management of the person's property or person, in any of the following situations: [¶] (1) *Where the conduct causing the injury occurs after the person knows or should have known of the presence of the peace officer ....*" (§ 1714.9, subd. (a)(1), italics added.)[6]

Plaintiff argues that the statute applies, simply because the conduct causing her injuries occurred after defendants knew of her presence at the scene of the UDT training course. We disagree. ■ The statute applies only where an officer is injured by a separate, subsequent act of negligence *other than* that which necessitated the officer's presence.

The *Calatayud* court explained that section 1714.9, subdivision (a)(1) was enacted " 'specifically to reverse the effect of [*Hubbard v. Boelt* (1980) 28 Cal.3d 480, 484 [169 Cal.Rptr. 706, 620 P.2d 156] (*Hubbard*)].' " (*Calatayud, supra,* 18 Cal.4th at p. 1065.) The *Hubbard* court held that the firefighter's rule barred a police officer's claim for injuries suffered while chasing a speeding motorist. Instead of stopping, the motorist accelerated, reaching a speed of 100 miles per hour. (*Calatayud, supra,* at p. 1065.)

In a vigorous dissent, Justice Tobriner criticized the *Hubbard* majority. He wrote that "[p]ast cases applying the fireman's rule make it clear that while a defendant may be shielded from liability for negligent acts committed prior to the fireman's or policeman's presence which cause or fail to prevent the fire

---

[6] The statute does not change or modify the common law independent acts exception. (§ 1714.9, subd. (e).)

or crime, the rule provides no shelter for a defendant who, after the officer arrives, commits *subsequent negligent acts* which cause the officer's injury." (*Hubbard, supra,* 28 Cal.3d at p. 488, italics added.)

As the *Calatayud* court observed, "Viewed in context, [section 1714.9, subdivision (a)(1)] demonstrates singular concern with the prototypical case in which the firefighter's rule is invoked to shield a defendant whose original misconduct occasioned an officer's presence and whose *subsequent acts* caused injury. Manifestly, that was 'the evil to be prevented by the legislation.' " (*Calatayud, supra,* 18 Cal.4th at p. 1068, italics added.)

In *Seibert,* this court observed that the statute "can reasonably be applied to new conduct committed [by the tortfeasor] after the officer has been summoned in the course of his duties [citations], it cannot be reasonably applied to conduct occurring while the officer is 'present' but before he has undertaken his duties of protection or crime prevention." (*Seibert, supra,* 18 Cal.App.4th at pp. at pp. 408–409, fn. and italics omitted.) The *Seibert* court also noted that construing the statute as imposing liability whenever an officer is present, "leads to absurd results and is contrary to any reasonable policy of the law." (*Id.* at pp. 407–410.)

█ Thus, section 1714.9, subdivision (a)(1) does not create a duty of care simply because an officer is injured after his or her presence is known. Rather, it applies only where the officer is injured by a separate, subsequent act of negligence that occurs after the conduct that necessitated the officer's presence.

█ Plaintiff was summoned to the scene of her injury for the purpose of participating in UDT training. Defendants' alleged negligent conduct was part of that training. It did not constitute additional and subsequent conduct to that which caused plaintiff's presence at the training course. Thus, section 1714.9, subdivision (a)(1) does not apply to impose a duty of care.

Moreover, applying section 1714.9, subdivision (a)(1) to the present case would lead to absurd or incongruous results when a peace officer or firefighter is injured during training. The persons conducting the training would be potentially liable for the officer's injuries simply because they knew the trainees were peace officers. This would discourage the training of peace officers, firefighters, and emergency personnel, particularly by outside parties with special expertise.

As Justice Mosk noted in his dissent in *Calatayud* "the purpose of section 1714.9[, subdivision] (a) is to put a peace officer or firefighter in the *same position* as other employees, not to grant them a privileged position."

(*Calatayud, supra,* 18 Cal.4th at p. 1075.) And as we earlier explained, the doctrine of primary assumption of risk bars plaintiff's claims under the present facts, notwithstanding her peace officer status.

Plaintiff relies on *Gibb v. Stetson* (1988) 199 Cal.App.3d 1008 [245 Cal.Rptr. 283] (*Gibb*) for the proposition that "no separate act of negligence [is] required for proper application of section 1714.9[, subdivision (a)(1)]." To the extent *Gibb* may be understood as supporting this proposition, we disagree with it.

In *Gibb*, a court bailiff was injured while taking a criminal defendant into custody. The defendant " 'slumped or went limp … and her body weight fell against [plaintiff's] right leg, right knee,' causing the injury." (*Gibb, supra,* 199 Cal.App.3d at p. 1011.) The *Gibb* court recognized that section 1714.9[, subdivision (a)(1)] applies where there is an "*additional and subsequent* act of misconduct once the defendant was aware of the officer's presence …." (*Gibb, supra,* at pp. 1013–1014, italics added.)

But in holding that the statute applied, the *Gibb* court reasoned that "[t]he statute provides an exception to the fireman's rule whenever the conduct causing injury, whether intentional or negligent, occurs after the defendant is aware of the presence of the peace officer. There is no doubt defendant was aware of the presence of the bailiff at the time of the alleged injury. Therefore, plaintiff's causes of action for negligence … clearly lie[s]." (*Gibb, supra,* 199 Cal.App.3d at pp. 1014–1015, fn. omitted.)

The *Gibb* court did not distinguish between the conduct necessitating the bailiff's presence at the scene from the defendant's conduct causing injury. But as we have explained, the statute does not apply unless the conduct causing injury is additional and subsequent to the conduct necessitating the officer's presence at the scene. And here, there was no additional, subsequent act of negligence.[7]

Accordingly, we conclude that ██ section 1714.9, subdivision (a)(1) does not apply when a public safety officer attends an employer-required, job-related training course and is injured during the course of that training.

### (3) Section 1714.9, Subdivision (a)(3)

Plaintiff further contends that section 1714.9, subdivision (a)(3) applies. We disagree. ██ This statute applies "[w]here the conduct causing the

---

[7] Other cases have construed section 1714.9, subdivision (a)(1) as requiring an additional subsequent act of negligence. (See, e.g., *Yamaguchi, supra,* 106 Cal.App.4th at pp. 480–481; *Kelhi v. Fitzpatrick* (1994) 25 Cal.App.4th 1149, 1158–1159 [31 Cal.Rptr.2d 182].)

injury was intended to injure the peace officer ...." (§ 1714.9, subd. (a)(3).) As explained above, there is no evidence that defendants intended to injure plaintiff.

Lastly, we note that plaintiff's reliance on *Boon* is misplaced. Following *Lipson v. Superior Court* (1982) 31 Cal.3d 362, 371 [182 Cal.Rptr. 629, 644 P.2d 822], the *Boon* court recognized that the firefighter's rule does not apply, and a duty of care arises, where an officer is *affirmatively* misled concerning the nature of the danger to be confronted. (*Boon, supra,* 80 Cal.App.4th at pp. 1329–1333.) But here there is no evidence that defendants affirmatively misled plaintiff about the risks inherent in the UDT training maneuver.

### 4. Disposition

The judgment is affirmed. Defendants shall recover their costs on appeal.

Richli, Acting P. J., and Gaut, J., concurred.